Farah Tabibkhoei (SBN 266312)
**DOMINIUM LAW, APC**
5665 Wilshire Blvd. #1071
Los Angeles, CA 90036
Tel: (323) 364-4148
Farah@DominiumLaw.com

Efrem Schwalb (Admitted Pro Hac Vice)
Gary Serbin (Admitted Pro Hac Vice)
**KOFFSKY SCHWALB LLC**
500 Seventh Avenue, 8th Floor
New York, New York 10018
Tel: (646) 553-1590
eschwalb@koffskyschwalb.com
gserbin@koffskyschwalb.com

Attorneys for Plaintiff
Flycatcher Corp. Ltd

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLYCATCHER CORP. LTD.,<br><br>Plaintiff,<br><br>vs.<br><br>FUTURPALS CO., LTD. d/b/a YOTURETOYS,<br><br>Defendant. | Case Number: 2:26-cv-11817-GW-PD<br><br>**PLAINTIFF FLYCATCHER CORP. LTD.'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE REGARDING WHY A PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[L.R. 7-19]<br>[NO HEARING UNLESS PARTIES ARE NOTIFIED] |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Flycatcher Corp. Ltd., by and through its attorneys of record, hereby applies *ex parte* for a temporary restraining order and order to show cause regarding why a preliminary injunction should not be issued enjoining Defendant Futurpals Co., Ltd. d/b/a YotureToys' ("Futurpals") infringement of Claim 1 of U.S. Patent no. 12,688,791 ("'791 Patent"), pursuant to Local Rule 7-19 and Federal Rule of Civil Procedure 65. Plaintiff seeks an order (1) restraining and enjoining Defendant FUTURPALS CO., LIMITED d/b/a YOTURETOYS and all of its agents, servants, employees and attorneys, and those persons in active concert or participation or privity with any of them from selling or offering for sale that item entitled AI Drawing Projector for Kids Ages 4-12 as offered on the site https://www.yoturetoys.com/ and on https://www.amazon.com/ under ASIN B0FSJ58P6N until further order of the Court; (2) that Amazon shall disable the offering under ASIN B0FSJ58P6N on https://www.amazon.com/ until further order of the Court; and that (3) any registrar or registry connected with the domain name https://www.yoturetoys.com/ is ordered to disable https://www.yoturetoys.com/ and https://www.futurpals.com and any other website resolving to or redirecting to https://www.yoturetoys.com/ until further order of the Court.

Good cause exists for granting this *ex parte* application. **First**, Plaintiff has demonstrated a likelihood of success on the merits on its patent infringement claim and established the validity of Claim 1 of the '791 Patent as shown in the supporting Declaration of Dr. Harry G. Direen. **Second**, Flycatcher will suffer irreparable harm absent a temporary restraining order halting Defendant's infringement and an order to show cause regarding why a preliminary injunction should not be issued. Absent an order granting Plaintiff's *ex parte* application, Flycatcher would be forced to wait at least six months to a year for the China Central Authority to effect service of a

noticed motion on Defendant to enjoin Defendant's unlawful, infringing conduct, as set forth more fully in Plaintiff's *Ex Parte* Application for Order Authorizing Service of Process by Alternative Means, filed concurrently herewith. The irreparable harm is due to: (1) direct competition and loss of market share; (2) add-on sales and other secondary harms, and (3) the near impossibility of collection of any monetary judgment, which creates a case of urgency. As set forth more fully in Plaintiff's *Ex Parte* Application for an Order Authorizing Service of Process by Alternative Means, service of process on Defendant by email is permitted under Article 15 of the Hague Convention on the basis of urgency and Federal Rule of Civil Procedure 4(f)(3). Service by e-mail would comport with Due Process because it is reasonably calculated to give Defendant notice and an opportunity to be heard.

This *Ex Parte* application is based on the Notice and *Ex Parte* Application, the Memorandum of Points and Authorities in support thereof, the Declaration of Shay Chen and exhibits thereto, the Declaration of Tal S. Benschar, Esq. and exhibits thereto, the Declaration of Harry G. Direen, Jr., Ph.D. and exhibits thereto, and the Declaration of Farah Tabibkhoei and exhibits thereto, and all pleadings and papers on file in this action.

Pursuant to Local Rule 7-19.1, as set forth in the Declaration of Farah Tabibkhoei, counsel for Plaintiff gave Defendant notice of this *Ex Parte* Application by email on October 23, 2026 and notified Defendant that any opposition must be filed no later than 48 hours after the filing of Plaintiff's *Ex Parte* Application. Additionally, as shown in Ms. Tabibkhoei's declaration, Plaintiff has no knowledge of whether Defendant has counsel, but Plaintiff's counsel made reasonable, good faith efforts to contact Defendant on October 21, 2026 to determine if Defendant has counsel in order to be able to notify its counsel, if any, of the date and substance of Plaintiff's ex parte application, by electronic mail (service@yoturetoys.com) and orally by phone. As set forth in the Declarations of Tal S. Benschar and Farah Tabibkhoei, despite a diligent search and reasonable inquiry, counsel for Plaintiff

was unable to locate a fax number or U.S. address for Defendant. As of the filing of this *Ex Parte* Application, Defendant has not indicated whether it will oppose the *Ex Parte* Application.

Dated: October 23, 2026

DOMINIUM LAW, APC

By: /s/ Farah Tabibkhoei
Farah Tabibkhoei
*Attorneys for Plaintiff*
*Flycatcher Corp. Ltd.*

## TABLE OF CONTENTS

I. INTRODUCTION....1
II. FACTS....2
A. History of Plaintiff Flycatcher....2
B. The Patented Technology of the SmartSketcher 2.0....2
C. Defendant Enters The Market And Competes Directly With Flycatcher....4
D. Futurpals Has Negatively Affected Flycatcher's Market Share....7
E. The Patented System Drives Consumer Demand For Both Flycatcher And Futurpals....8
F. Harms Suffered By Flycatcher....9
G. Futurpals Is A Chinese Company With Minimal U.S. Presence....10
H. Futurpals Ships and Sells Products in Los Angeles County....11
III. LEGAL STANDARD....11
IV. LEGAL ARGUMENT....12
A. Plaintiff Has Shown a Likelihood of Success On the Merits....12
B. Irreparable Harm....16
C. Balance of the Harms....21
D. Public Interest....21
E. The Injunction Should Extend To Certain Third Parties....22
F. The Court Has Discretion to Require a Bond....23
G. The Requirements for Ex Parte Relief Have Been Met....23
V. CONCLUSION....25

# TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) .................................................. 16, 17, 18, 19

*BioGaia USA LLC v. CeeLike Off. Glob. Brand Mgmt. Ltd.*,
2026 WL 2659592 (C.D. Cal. Sept. 8, 2026) ..............................................15

*Biomedical Device Consultants v. Vivitro Labs, Inc.*,
689 F.Supp.3d 749 (C.D. Cal. 2023) ..........................................................12

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .............................................................. 15, 16

*Canon, Inc. v. GCC Int'l Ltd.*,
263 Fed. Appx. 57 (Fed. Cir. 2008) ..........................................................18

*Chongqing Qiulong Tech. Corp. Ltd. v. Xinghai Hi-Tech (Shenzhen) Tech. Co.*,
2026 WL 851322 (C.D. Cal. Jan. 9, 2026) ........................................... 11, 12

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
2020 WL 5199434 (N.D. Cal. Jul. 20, 2020) ....................................... 18, 22

*Cordelia Lighting, Inc. v. Zhejiang Yankon Grp. Co. Ltd.*,
2015 WL 12656241 (C.D. Cal. Apr. 27, 2015) ..........................................18

*DMF, Inc. v. AMP Plus, Inc.*,
2019 WL 1099982 (C.D. Cal. Mar. 7, 2019) ....................................... 17, 21

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ..................................................................17

*Globalsantafe Corp. v. Globalsantafe.Com*,
250 F. Supp. 2d 610 (E.D. Va. 2003) ........................................................22

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ....................................................................16

*KHN Sols. LLC v. Shenzhen City Xuewu Feiping Trading Co.*,
2024 WL 4351861 (N.D. Cal. Sept. 30, 2024) ............................................22

*LyricFind, Inc. v. Musixmatch, S.p.A.*,
798 F. Supp. 3d 1040 (N.D. Cal. 2025)....................................................16
*Metalcraft of Mayville v. Toro Co.*,
848 F.3d 1358 (Fed. Cir. 2017) ........................................................ 18, 21
*M-I LLC v. FPUSA, LLC*,
2015 WL 3893343 (W.D. Tex. Nov. 4, 2015) ..........................................18
*Mission Power Eng'g Co. v. Cont'l Cas. Co.*
883 F. Supp. 488 (C.D. Cal. 1995).........................................................12
*Natera, Inc. v. NeoGenomics Lab'ys, Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ...................................................... 16, 17
*Nutramax Lab'ys, Inc. v. Body Wise Int'l, Inc.*,
2019 WL 3210095 (C.D. Cal. Apr. 10, 2019)..........................................18
*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ...............................................................14
*Polymer Techs., Inc. v. Bridwell*,
103 F.3d 970 (Fed. Cir. 1996) .................................................................21
*Power Probe Grp., Inc. v. Innova Elecs. Corp.*,
2025 WL 798861 (Fed. Cir. Mar. 13, 2025) ............................................21
*QBAS Co. v. C Walters Intercoastal Corp.*,
2010 WL 7785955 (C.D. Cal. Dec. 16, 2010)..........................................15
*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 4427490 (N.D. Cal. Aug. 22, 2016).........................................17
*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011) ...............................................................21
*Medcursor Inc. v. Shenzen KLM Internet Trading Co.*,
543 F. Supp. 3d 866, 871 (C.D. Cal. 2026) .............................................15
*Six v. Newsom*,
462 F. Supp. 3d 1060 (C.D. Cal. 2020)....................................................11

*SuperTECH, Inc. v. My Choice Software, LLC*,
158 F.4th 1005 (9th Cir. 2025) ....................16

*TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*,
920 F.3d 777 (Fed. Cir. 2019) ....................17

*Titan Tire Corp. v. Case New Holland, Inc.*,
566 F.3d 1372 (Fed. Cir. 2009) ....................15

*Windsurfing Int'l, Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ....................21

**Statutes**

35 U.S.C. § 271(a) ....................16

35 U.S.C. § 282 ....................14

Fed. R. Civ. P. 65(c) ....................23

Federal Rule of Civil Procedure 65(b) ....................11

**Rules**

L.R. 7-19 .................... 12, 24

L.R. 7-19.1 ....................24

# I. INTRODUCTION

Plaintiff Flycatcher Corp. Ltd. ("Flycatcher") is the assignee and owner of the entire right, title, and interest in and to U.S. Patent No. 12,688,791 ("the '791 Patent"), titled "Interactive Educational Electronic Toy System" and duly issued by the United Stated Patent and Trademark Office on July 21, 2026. (ECF 1 at 3, ¶ 11; see also ECF 1-1]) Flycatcher brings suit against Futurpals Co., Limited ("Futurpals") for patent infringement through the sale of a toy that directly competes with Flycatcher's product. (ECF 1 at 4-5, ¶¶ 17-21).

Flycatcher brings this *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause regarding Why a Preliminary Injunction Should Not Be Issued enjoining Defendant Futurpals' infringement of Claim 1 of the '791 Patent. Good cause exists to grant this *Ex Parte* Application for several reasons: **First**, Plaintiff has demonstrated a likelihood of success on the merits on its patent infringement claim and established the validity of Claim 1 of the '791 Patent as shown in the supporting Declaration of Dr. Harry G. Direen. **Second**, Flycatcher will suffer irreparable harm absent an order for a temporary restraining order halting Defendant's infringement and an order to show cause regarding why a preliminary injunction should not be issued. As shown in Flycatcher's Ex Parte Application for an Order Authorizing Service by Alternative Means, Flycatcher would be forced to wait at least six months to a year for the China Central Authority to effect service of a noticed motion on Defendant. Plaintiff will be irreparably harmed, especially in light of the upcoming holiday season and heightened demand for toys due to: (1) direct competition and loss of market share; (2) add-on sales, and (3) the near impossibility of collection of any monetary judgment, creating a case of urgency.

A temporary restraining order and order to show cause why a preliminary injunction should not be issued is necessary to prevent ongoing and irreparable harm to Plaintiff arising from Defendant's infringement of Plaintiff's patent during the imminent holiday shopping season, a critical sales period for consumer products.

Each day that Defendant remains free to market, offer for sale, and sell the infringing product compounds the harm to Plaintiff, diminishes good will, visibility to customers, customer loyalty, market share, and threatens to deprive Plaintiff of the meaningful protection afforded by its patent rights.

Accordingly, Plaintiff respectfully requests that the Court grant this *Ex Parte* Application in its entirety.

## II. FACTS

### A. History of Plaintiff Flycatcher

Flycatcher is a United Kingdom private limited company, based in London, United Kingdom. Flycatcher sells its products in the United States exclusively through its wholly-owned subsidiary, Flycatcher Toys, Inc. Flycatcher Toys sells its products on Amazon.com, on Wal-mart.com and through its own website, https://store.flycatcher.toys. (Chen Decl. ¶ 2)

Flycatcher was founded by CEO Shay Chen to manufacture and sell children's toys when he observed his children moving seamlessly between traditional and digital play. Flycatcher toys incorporate state-of-the-art technology into kid-friendly products. This elemental integration is reflected in every one of Flycatcher's toys. (*Id.* ¶ 3) Flycatcher toys incorporate "STEAM" learning concepts and core curricula while nurturing creativity, physical skills and emotional intelligence. STEAM refers to an educational approach to learning that uses Science, Technology, Engineering, the Arts and Mathematics as access points for guiding student inquiry, dialogue, and critical thinking. This method has been the subject of studies showing its effectiveness in child development and education. (*Id.* ¶ 4)

### B. The Patented Technology of the SmartSketcher 2.0

One of Flycatcher's most popular products is the SmartSketcher 2.0 device. The device was designed by Chen and Shachar Limor. (*Id.* ¶ 5) The device includes a projector that beams step-by-step images onto real paper so kids trace, learn, and

finish drawings they're proud of. It projects pictures from pre-loaded cartridges or the users' own photos. The following is an image of the SmartSketcher 2.0:




A video showing how the SmartSketcher 2.0 is used by children can be viewed at: https://www.youtube.com/watch?v=aNfJuejW-dw&t=30s. (*Id.* ¶¶ 6-7)

Chen and Shachar Limor are co-inventors on U.S. Patent No. 12,688,791 for an Interactive Educational Electronic Toy System (the "'791 Patent"). The '791 Patent was assigned by the inventors to Flycatcher, which is the current owner of the patent. (*Id.* ¶ 8) The '791 Patent protects the features which are embodied in the SmartSketcher 2.0 product. As detailed in the patent, the key features are that the toy presents a selected "challenge," meaning an image to trace, which was selected from a challenge repository; providing the selected challenge to a projecting device; processing the selected challenge; a projection surface; projecting the projectable

challenge onto a projection surface; and enabling a user to interact with the projectable challenge projected onto the projection surface, thereby to complete the challenge, meaning to trace the selected image. (*Id.* ¶¶ 8-9) (A copy of the '791 Patent is submitted as Direen Decl. Exh. B.)

SmartSketcher 2.0 has been a very successful product for Flycatcher. In 2025, sales were substantial, the vast majority of which was during the "gifting season" at the end of the year. The patented features of the SmartSketcher 2.0 are a large driver of consumer demand. Among others, the SmartSketcher 2.0 uses step-by-step tracing to guide the user (generally a child) to trace the picture in steps, an important functionality that Flycatcher invented. The invention is new and innovative in the toy market, and the ability to select an image and have it projected onto a surface where it can be traced by the user – the central point of the patented invention – has been the key factor in the product's success. (Chen Decl. ¶¶ 10-11)

Flycatcher has more recently introduced the SmartSketcher AI, which incorporates the same patented technology as the SmartSketcher 2.0, and adds AI capability to the product. (*Id.* ¶ 12)

### C. Defendant Enters The Market And Competes Directly With Flycatcher

In 2025, Flycatcher had virtually 100% market share in this type of interactive toy, as it had recently introduced the product. At that time, Flycatcher was the only player providing a solution based on a projector, step-by-step process, connecting to app, and converting pics to an outline created by the user. (*Id.* ¶13)

However, in 2026, two competitors have introduced products which copy the patented technology and directly compete with Flycatcher's SmartSketcher 2.0, both offering virtually the same technology and play experience. One company is defendant Futurpals Co., Ltd. ("Futurpals"). The other infringing competitor is named Caydo. Both offer their infringing products on Amazon and other internet

platforms. As Flycatcher is a small company, it is pursuing one infringer at a time. (*Id.* ¶ 14)

Futurpals is a Chinese company which does business under the name Yoture Toys. Its website is located at https://www.yoturetoys.com/. The infringing product is the only one currently offered on the website. It also sells the infringing product on Amazon. The Yoture Toys product appears thus:




(*Id.* ¶ 15) Futurpals lists the item on Amazon under ASIN (Amazon Standard Identification Number) B0FSJ58P6N. (*Id.* ¶ 16)

The Amazon offering page touts the features of the product, and includes a video by a consumer entitled "Educational fun without a screen!" showing the consumer's daughter using the product. In the course of the video minutes, the

consumer states how her daughter loves the toy and demonstrates use. Among other things, she states, "I love that it gives you step by step instructions," and shows the step by step functionality in the video, while pressing the buttons on the product to use that functionality:




(*Id.*) The Futurpals website at yoturetoys.com features a product page which includes comments from satisfied customers used to promote the product. Some of those comments specifically mention the step-by-step functionality:

> It's a present i bought for my daughter. plenty features in it. Impressed as it folds compact and easy to adjust. Very simple to use even for the kids, can keep kids busy for a while literally. Makes drawing super easy. With app you can choose more options. **I loved the step by step instructions for drawing** so is perfect for any age child. Absolutely makes the best present.
>
> Clever little projector that actually gets both my children sketching instead of staring at YouTube. It lives on the kitchen table, pairs over Bluetooth with a phone or tablet, and the app uses AI to turn a short description into a picture you can project and trace. You can snap a photo of the dog or a favourite toy, it converts it to an outline, and you are off. There are 50 built-in images, plus a free in-app subscription that unlocks more than a hundred themed packs. **The step-by-step mode is**

> **brilliant for my five-year-old**, while my seven-year-old likes typing in her own ideas. . . .

(*Id.* ¶ 17)

The step-by-step feature is also being promoted by Futurpals on the packaging of its accused product. The following is an image of the packaging from a product our counsel ordered:




(*Id.* ¶ 18)

**D. Futurpals Has Negatively Affected Flycatcher's Market Share**

Although it appears that Futurpals introduced the product in late 2025, at the time it made little effort to promote it and it had little effect on SmartSketcher 2.0 sales. However, in 2026, it has made a large marketing push, and that has directly reduced Flycatcher's market share. (*Id.* ¶ 19) As noted, in 2025, Flycatcher's market share was virtually 100%. In 2026, however, Futurpals has cut significantly into this share. The following figures derive from Amazon, the primary retail selling point for these products, which show sales in the last three months:

| Seller | July-Sept 2026 (Sales $ and Market Share) |
|---|---|
| Flycatcher | $ 192,697 -- 54% |
| Futurpals | $ 77,300 -- 22% |
| Caydo | $ 87,100 -- 24% |

Thus the two infringers have together taken almost half of the market share, and Futurpals has taken some 22%. (*Id.* ¶¶ 20-21)

It is critical to note an important aspect of the market for such products: the US gifting season. That season runs from November 1 to December 15, and corresponds to the holiday season when many people purchase holiday gifts, particularly for children. Flycatcher's experience matches this. In 2025, the vast majority of sales were in the gifting season, and Flycatcher expects that to be repeated in 2026. Thus the loss to market share caused by Futurpals is expected to greatly increase when that season commences. (*Id.* ¶¶ 22-23)

**E. The Patented System Drives Consumer Demand For Both Flycatcher And Futurpals**

The innovative patented system for the SmartSketcher 2.0 product clearly is a major factor driving consumer demand. Until the infringers came along, it was a unique product which featured a toy that has stored images, that projects these images onto a tracing surface, and enables the user to trace the picture and optionally fill in color. It is this patented system which makes the SmartSketcher 2.0 unique and which is the major cause of its commercial success and consumer demand. (*Id.* ¶ 24)

A review of Futurpals' promotion of its infringing products, as shown above, shows that the same system, with the step-by-step functionality, is being promoted to sell a competing product. Futurpals' own promotion shows that the central selling point for its competing product is the very system which is the subject of the patent.

There is little doubt that any consumer demand for this competing product is primarily, if not exclusively, because of the use of the same system as SmartSketcher 2.0, as protected by the ’791 Patent. (*Id.* ¶ 25)

**F. Harms Suffered By Flycatcher**

Futurpals has significantly cut into Flycatcher’s market share in the prior three months, and it would be expected that it would similarly capture a large share of the market during the gifting season. (*Id.* ¶ 26) Flycatcher is suffering from other, additional harms from this competition.

Flycatcher sells certain add-ons to its SmartSketcher 2.0 product: cartridges and a premium App subscription. The SmartSketcher 2.0 product comes with 60 images already uploaded into the system. Consumers can purchase cartridges which contain additional images, which cartridges can be inserted into the main system and loaded. Another option is to obtain a premium subscription for the App. The SmartSketcher 2.0 has a free App, which permits users to create traceable outlines from photos and other images, such as family or pet photographs. Flycatcher also offers a premium App subscription, which would allow loading of additional pre-programmed images, similar to the cartridges. These add-ons have been very profitable for Flycatcher, as their costs to Flycatcher are minimal. In 2025, Flycatcher received about $2 million in revenue from these add-ons. The loss of market share to infringers like Futurpals means that there would be a related loss of sales of these add-ons. While the amount of such losses would be difficult to calculate, the loss would be real and substantial. (*Id.* ¶¶ 27-32)

Another loss to Flycatcher stems from repeat customers and customer-recommendations. The SmartSketcher 2.0 product is generally purchased by adults for children, often relatives such as parents, grandparents, etc. Flycatcher has had a small percentage of repeat customers, who, it assumes, were happy with their first purchase and wanted to gift the same product to another child. Furthermore, satisfied

customers often recommend the product to their friends and family, who then purchase the product. The loss of market share also causes loss of these additional purchases. Again, while it would be difficult to calculate the amount of such loss, it is still substantial. (*Id.* ¶ 33)

### G. Futurpals Is A Chinese Company With Minimal U.S. Presence

When Flycatcher discovered that Futurpals was selling the infringing product, Flycatcher researched the company. The Amazon Seller page lists no US address, but lists its address in Chinese characters:

**Detailed Seller Information**

**Business Name:** Shen zhen you qu ba di ke ji you xian gong si
**Business Address:**
宝安区福海街道新和社区宝安大道6099号星港同创汇
天玑座519（前海合作区）
深圳市
广东省
518103
CN

The Zip code indicates a place of business in Shenzhen, Guangdong Province. Futurpals owns a U.S. Trademark registration for the word mark BRIGHTBUDDIES. The registration lists an address in Hong Kong; our research indicates that is a registry office used by many companies. These are Futurpals' only known addresses. (*Id.* ¶ 34)

The yoturetoys.com website initially had no contact information. Since then, an email address, service@yoturetoys.com, has been added. (*Id.* ¶ 35)

The WHOIS lookup for the yoturetoys.com domain name indicates that the registrar and servers for the website are both located in China. (*Id.* ¶ 36 and Exh. F) The Amazon offerings are listed as Fulfilled by Amazon, which means that the Seller

sends a quantity of inventory to Amazon, which then fills orders from its own warehouses. (*Id.* ¶ 37)

The Shipping page of the yoturetoys.com website states:

> **Warehouse Location**
>
> All orders are processed and shipped from our warehouse located in Los Angeles, California, USA.

(*Id.* ¶ 38 and Exh. E) No address is given, and Flycatcher has been unable to trace its location. Other than that warehouse, its listing on Amazon and its own website, and one social media account, Futurpals appears to have no U.S. presence or assets.

### H. Futurpals Ships and Sells Products in Los Angeles County

As set forth in the declaration of Tal S. Benschar, Esq., Futurpals has customers in Los Angeles County and markets to, sells, and delivers its infringing products to customers in this District. See Benschar Decl., ¶¶ 2-6, Exs. 1-3.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65(b), the Court may issue a temporary restraining order if the movant provides specific facts in an affidavit clearly showing that immediate and irreparable injury, loss, or damage will result absent the order. Fed. R. Civ. P. 65(b) "The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction." *Six v. Newsom,* 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020). To obtain either relief, a party must demonstrate "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* The same standards apply when seeking such relief in a patent case. *Chongqing Qiulong Tech. Corp. Ltd. v. Xinghai Hi-Tech (Shenzhen) Tech. Co., Ltd*, 2026 WL 851322, at *1 (C.D. Cal. Jan. 9, 2026).

In order to justify *ex parte* relief, the moving party must demonstrate: (1) that its cause will be irreparably prejudiced if the underlying motion is heard according to regularly noticed procedures and (2) the moving party is without fault in creating the crisis. See *Mission Power Eng'g Co. v. Cont'l Cas. Co.* 883 F. Supp. 488, 492 (C.D. Cal. 1995). Additionally, the moving party must make reasonable, good faith efforts to orally advise counsel for all parties, if known, of the date and substance of the *ex parte* application and advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel opposes the application. L.R. 7-19.

As shown below, Flycatcher has demonstrated all four factors for issuance of temporary restraining order and preliminary injunction and meets the requirements for *ex parte* relief.

## IV. LEGAL ARGUMENT

### A. Plaintiff Has Shown a Likelihood of Success On the Merits

"[T]o establish likelihood of success on the merits, a plaintiff must show that that the defendant has likely infringed at least one valid and enforceable patent claim." *Chongqing Qiulong Tech. Corp. Ltd.,* 2026 WL 851322, at *2.

#### 1. Patent Infringement

"Determining literal infringement is a two-step process: the 'proper construction of the asserted claim and a determination whether the claim as properly construed reads on the accused product or method.'" *Biomedical Device Consultants v. Vivitro Labs, Inc.*, 689 F.Supp.3d 749, 755 (C.D. Cal. 2023) "Literal infringement requires that every limitation ... in a claim must be found in an accused product, exactly." *Id.*

The Declaration of Harry G. Direen, Ph.D. establishes Plaintiff has a likelihood of success on the issues of infringement and validity of Claim 1 of the '791 Patent. (Direen Decl., ¶¶ 1-5.) Dr. Direen is an expert in the field of visual display systems incorporating embedded hardware and software controls, a field to

which the'791 Patent pertains, with over 40 years of experience as an engineer designing and developing products in the electronics and software industry and qualifies as a person of ordinary skill in the art ("POSITA") at the time of the invention. (Direen Decl., ¶¶ 6-15, 38-41.) In forming his opinions from a perspective of POSITA, Dr. Direen reviewed relevant materials, including the intrinsic record of the '791 Patent and the prior art of record, and performed a teardown on one of two physical accused products that he evaluated. (See Direen Decl., ¶¶ 16-18, for material considered and exhibits used.) Dr. Direen's evaluation from perspective of a POSITA used proper legal standards. (See Direen Decl., ¶¶ 19-29.)

As Dr. Direen explains, the asserted '791 Patent pertains to a field of visual display systems incorporating embedded hardware and software controls, and specifically teaches an interactive education electronic toy system and method for projecting a challenge (lesson), such as a drawing challenge, to a user. (Direen Decl., ¶¶ 30-31, 33-37.)

As it applies to Claim 1 of the '791 Patent, which is the subject of this motion, the '791 Patent discloses and teaches an embodiment in which the system breaks a drawing lesson into a sequential series of "sub-images" (individual steps or line/curve guides). The system lets a user select a drawing lesson from a challenge repository (digital library), processes the selected drawing lesson, and projects the step-by-step line/curve guides of the lesson onto a projection surface (e.g., paper) one after the other – allowing tracing each new line/curve directly over the existing drawing, progressively completing the full drawing. (Direen Decl., ¶ 32.)

The '791 Patent underwent a thorough examination by the patent Examiner, including an interview with the Applicant and evaluation of Applicant's arguments against the prior art in a formal response to the Examiner's Office Action. (Direen Decl., ¶¶ 42-50.) In fact, while allowing Applicant's claims, including then

pending Claim 1, the Examiner expressly acknowledged that "amendments to the claims taken with the Applicant Arguments submitted on 11/4/2025 are found convincing." (Direen Decl., ¶ 49.)

For the purpose of this motion, the asserted Claim 1 of the '791 Patent does not require formal judicial construction because all claim terms carry their plain and ordinary meaning to a person of ordinary skill in the art ("POSITA"). *See Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). As set forth in Dr. Direen's declaration, based on a review of the intrinsic record of the '791 Patent from the perspective of a POSITA, no terms require special construction at this stage and no formal construction is necessary to resolve this motion. (Direen Decl. ¶¶ 23, 51.) Because the asserted terms are understandable on their face and no claim construction disputes must be resolved to decide this motion, the Court can evaluate Plaintiff's likelihood of success on infringement under their plain and ordinary meanings.

**2. Futurpals' Direct Infringement of Claim 1 of the '791 Patent**

Futurpals has directly infringed Claim 1 of the '791 Patent and continues to infringe that claim. As detailed in his declaration, Dr. Direen analyzed how the accused Futurpals device literally infringes each element of Claim 1 of the '791 Patent and copies its functionality, including its ability to project a plurality of challenge steps of a drawing challenge according to an ordered sequence, referred herein as a "step-by-step" functionality. (Direen Decl. ¶52.) Moreover, as explained by Dr. Direen, to an extent any element is found not to be present in the accused Futurpals device literally, the accused device infringes under the doctrine of equivalents. (Direen Decl. ¶¶52, 53.)

**3. Claim 1 of the '791 Patent is Likely to Withstand Any Validity Challenge**

Issued patents are presumed valid. 35 U.S.C. § 282. "[P]atent[s] enjoy[] the

same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Medcursor Inc. v. Shenzen KLM Internet Trading Co.*, 543 F. Supp. 3d 866, 871 (C.D. Cal. 2026) (*quoting Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)). "Because patents are presumed valid, the challenger bears the burden to establish invalidity by clear and convincing evidence." *Id.* Thus, [b]ecause an issued patent enjoys the presumption of validity, a patentee seeking a preliminary injunction generally need not address the issue of validity in its initial moving papers." *QBAS Co. v. C Walters Intercoastal Corp.*, 2010 WL 7785955, at *3 (C.D. Cal. Dec. 16, 2010).

Nevertheless, the expert declaration of Dr. Harry G. Direen also analyzes how the asserted '791 Patent is likely to withstand a validity challenge. For example, as Dr. Direen explains, during prosecution of the '791 Patent, patentability of the applicant's invention over the prior art of record was evaluated not only based on written materials and written argument but also based on a direct conversation with the Applicant. (Direen Decl. ¶¶ 54-58.)

Accordingly, Claim 1 of the '791 Patent is likely to withstand validity challenge.

**4. The Court Has Personal Jurisdiction Over Futurpals**

"[P]ersonal jurisdiction is a threshold issue and relevant to the likelihood of success factor of a preliminary injunction analysis." *BioGaia USA LLC v. CeeLike Off. Glob. Brand Mgmt. Ltd.*, 2026 WL 2659592, at *2 (C.D. Cal. Sept. 8, 2026). This Court applies California's long-arm statute, which extends to the maximum limits of Due Process. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 763 (9th Cir. 2025).

Specific jurisdiction is evaluated under a three-part test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking

the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. *SuperTECH, Inc. v. My Choice Software, LLC*, 158 F.4th 1005, 1010 (9th Cir. 2025). All three criteria are met here.

Futurpals has sold and offered for sale the infringing items into this district both from Amazon and its website. (Benschar Decl. ¶¶ 4-5) And, according to its website, all orders on its website are processed in and shipped from a warehouse it maintains in Los Angeles. (Chen Decl. ¶ 38 and Exh. E) These contacts are purposeful; the claims of patent infringement arise out or relate to these purposeful contacts because the sale and offer for sale of infringing items violates the Patent Act, 35 U.S.C. § 271(a); and jurisdiction is reasonable under these circumstances. *See Briskin,* 135 F.4th at 755-61 (personal jurisdiction over retail platform that sold to California); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) (Seller who sold into forum through Amazon subject to personal jurisdiction); *LyricFind, Inc. v. Musixmatch, S.p.A.*, 798 F. Supp. 3d 1040, 1059 (N.D. Cal. 2025) (Italian company subject to personal jurisdiction when its website stated that it maintained an office in San Francisco).

**B. Irreparable Harm**

Irreparable harm exists where the "remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable harm suffered by the patentee." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 644–45 (Fed. Cir. 2015). "Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024).

Flycatcher has shown a number of factors evidencing that it will experience irreparable harm.

**1. Direct Competition and Loss of Market Share**

Flycatcher's and Futurpals' products compete directly in the marketplace, both offering virtually the same technology and play experience. (Chen Decl. ¶ 14) "Evidence of head-to-head competition and lost market share can support a showing of irreparable harm." *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th at 1378. "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). "The inherent difficulty of quantifying loss of market share . . . and of estimating monetary damages indicates that remedies at law are inadequate." *TEK Glob., S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019).

In this case, Flycatcher had virtually 100% market share in 2025; after Futurpals and one other competitor entered the market, it lost about half that in the last 90 days. And, given that the gifting season around the year-end holidays has constituted the vast majority of yearly sales, the potential for immediate harm is great. (Chen Decl. ¶¶ 19-23, 26)

**2. Add-On Sales And Other Secondary Harms**

The loss of sales of associated add-on products, sometimes termed the "ecosystem effect," has been recognized as difficult to quantify and supporting irreparable harm. *Apple Inc.*, 809 F.3d at 645 ("downstream sales of accessories"). *See DMF, Inc. v. AMP Plus, Inc.*, 2019 WL 1099982, *12 (C.D. Cal. Mar. 7, 2019); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490, *14 (N.D. Cal. Aug. 22, 2016). Flycatcher has experienced and is likely to experience such harm from loss of sales of cartridges and/or premium app subscriptions, which are add-on sales to the Smart Sketcher 2.0 product. (Chen Decl. ¶¶ 27-32)

Flycatcher is also being harmed by loss of repeat customers and recommendations to others by satisfied customers. (*Id.* ¶ 33) Such harms are also

difficult to quantify and have been held to be irreparable. *Apple Inc.*, 809 F.3d at 645; *Metalcraft of Mayville v. Toro Co.,* 848 F.3d 1358, 1368 (Fed. Cir. 2017) (Loss of customer can cause irreparable harm due to ecosystem effects, which include "where one company's customers will continue to buy that company's products and recommend them to others.")

**3. Near Impossibility of Collection of any Monetary Judgment**

Where the evidence indicates that collection of a monetary award after trial will be difficult to collect, that can constitute irreparable harm. *Nutramax Lab'ys, Inc. v. Body Wise Int'l, Inc*., 2019 WL 3210095, at *6 (C.D. Cal. Apr. 10, 2019). *See Canon, Inc. v. GCC Int'I Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008) (considering the improbability that the patentee could collect a money judgment as weighing in favor of an injunction).

Futurpals is located in China and has only a limited U.S. presence, apart from its Amazon account. (Chen Decl. ¶¶ 34-39) "[I]t is . . . difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.,* 2020 WL 5199434, at *11 (N.D. Cal. Jul. 20, 2020) (collecting cases). This is due, in part, to the fact that China and the United States lack a reciprocal enforcement-of-judgment treaty. *See id.* "[D]istrict courts have often found that money damages are insufficient in cases involving foreign infringers." *M-I LLC v. FPUSA, LLC*, 2015 WL 3893343, at *13 (W.D. Tex. Nov. 4, 2015), *aff'd in relevant part, vacated in part on other grounds*, 626 F. App'x 995 (Fed. Cir. 2015); *see Cordelia Lighting, Inc. v. Zhejiang Yankon Grp. Co. Ltd.,* 2015 WL 12656241, *9 (C.D. Cal. April 27, 2015) ("The potential difficulty inherent in collecting damages from a foreign defendant with limited assets in the United States supports a finding of irreparable harm.")

**4. Causal Nexus**

The Federal Circuit has required a patentee to show a causal nexus between the claimed irreparable harm and the patented inventions. *Apple Inc.*, 809 F.3d at

642-43. However, a patentee need not show that the patented invention is the exclusive or primary factor that causes consumer demand; it is sufficient to show "some connection" between the patented invention and consumer demand, and that the patented features "impact consumer decisions to purchase the accused device." *Id.*

In this case, the invention recited in Claim 1 of the '791 Patent, which claim is the subject of this motion, includes a key feature of projecting a plurality of challenge steps of a drawing challenge according to an ordered sequence (*see*, Direen Decl. ¶¶ 56 and 47-49), also referred to as a set-by-step challenge tracing.

In fact, as sold out of the box, without Futurpals' corresponding add-on App, which requires installing the App on a separate mobile terminal and wirelessly connecting it to the accused product, step-by-step tracing is the only feature available for use in the accused product. The step-by-step functionality is also promoted on the packaging of its accused product:




(Chen Decl. ¶ 18) Futurpals touts this aspect of its product in promotion. Its Amazon page includes a video by a consumer entitled "Educational fun

without a screen!" showing the consumer's daughter using the product. (Chen Decl. ¶ 16) In the course of the video, the consumer states how her daughter loves the toy and demonstrates use. Among other things, she states, "I love that it gives you step by step instructions," and shows the step by step functionality in the video, while pressing the buttons on the product to use that functionality:




(*Id.*)

The Futurpals website at yoturetoys.com features a product page which includes comments from satisfied customer used to promote the product. Some of those comments specifically mention the step-by-step functionality. (*Id.* ¶ 17)

Futurpals' own promotion touts the step-by-step functionality, which is one of the innovations of the patent. Flycatcher thus has amply demonstrated a causal nexus, as the patented invention of claim 1 of the '791 Patent is the primary factor that drives consumer demand for both Flycatcher and its competitors, and Futurpals' own promotion indicates reliance on the patented invention.

**5. Other Infringers Do Not Negate Irreparable Harm**

Apart from Futurpals, there is one other competitor-infringer who began offering competing products in 2026. (Chen Decl. ¶ 14) This, however, does not

negate irreparable harm being caused by Futurpals. "The fact that other infringers may be in the marketplace does not negate irreparable harm." *Metalcraft of Mayville, Inc.*, 848 F.3d at 1368. "The fact that other infringers may be in the marketplace does not negate irreparable harm. A patentee does not have to sue all infringers at once. Picking off one infringer at a time is not inconsistent with being irreparably harmed." *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975 (Fed. Cir. 1996).

**C. Balance of the Harms**

As set forth above, Flycatcher will experience substantial and irreparable harm from the sale of infringing products by Futurpals. Although Futurpals will lose these sales if the injunction is entered, that is outweighed by the harm to Flycatcher, the patent owner. It appears clear that Futurpals copied the patented invention to compete and undercut Flycatcher. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *DMF, Inc.,* 2019 WL 1099982, *14 (*quoting Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)). *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed.Cir. 2011) ("[R]equiring [the patentee] to compete against its own patented invention, with the resultant harms described above, places a substantial hardship on [the patentee].")

**D. Public Interest**

"Public policy favors the enforcement of patent rights." *DMF, Inc.,* 2019 WL 1099982, *14. "[T]he right to exclude [granted by an issued patent] promotes innovation and that the focus of the fourth factor is whether there is a critical public interest that would be injured by the grant of preliminary relief." *Power Probe Grp., Inc. v. Innova Elecs. Corp.,* 2025 WL 798861, at *3 (Fed. Cir. Mar. 13, 2025). Here, the public interest would not be injured by issuing the injunction.

**E. The Injunction Should Extend To Certain Third Parties**

Federal injunctions bind not only the parties and their officers and agents, but also any "other persons who are in active concert or participation with" them who receive notice of the injunction. Fed.R.Civ.P. 65(d)(2)(C). To ensure that the requested injunction is effective, both Amazon and the Domain Registry and Registrar should be bound by any injunction, with notice.

**1. Amazon**

Futurpals sells the infringing product on Amazon. (Chen Decl. ¶ 16) The proposed Order identifies the product by ASIN (Amazon Standard Identification Number) and requires Amazon to delist the product. Courts have granted similar relief upon finding infringement. *Cisco Sys., Inc.*, 2020 WL 5199434 at *34 (directing injunction to online platforms, including Amazon). *See KHN Sols. LLC v. Shenzhen City Xuewu Feiping Trading Co.*, 2024 WL 4351861, at *5 (N.D. Cal. Sept. 30, 2024) (ordering Amazon to disable identified ASINs in false advertising case).

**2. Domain Registry and Registrar**

Futurpals also sells the infringing production through its website, yoturetoys.com. The infringing product is the only product currently offered there. (Chen Decl. ¶ 15) To ensure that the injunction is effective, Flycatcher seeks an order directed to the registry and registrar[1] for that domain name to disable the website pending further order of the Court. "[T]he Court has the authority to order

---

[1] Domain name registrars "handle the retail side of domain name registration, selling domain names to individual domain name registrants," while the registry "performs a central but more limited function, namely maintaining and operating the unified Registry Database, which contains all domain names registered by all registrants and registrars in a given top level domain ...." *Globalsantafe Corp. v. Globalsantafe.Com*, 250 F. Supp. 2d 610, 619 (E.D. Va. 2003).
The registry for .com domain names is Verisign Inc. in Reston, Virginia.

that domain names be disabled, which necessarily requires cooperation from domain name registrars and registries." *Restoration Hardware, Inc. v. Light*, 2023 WL 4479250, at *4 (N.D. Cal. 2023). *See Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.,* 2020 WL 5199434, at *34 (directing injunction to registrar); *Otter Prod., LLC v. Anke Grp. Indus. Ltd*., 2013 WL 5910882, at *4 (D. Nev. 2013) (granting TRO ordering any web hosting company, domain name registry, and/or domain name registrar getting notice to remove infringing products from defendant's website or alternatively to disable access to the website). Here, given that the registrar is located in China, we are requesting that the injunction also be directed to the registry, which is located in Virginia.

**F. The Court Has Discretion to Require a Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any" or "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). Given the clear evidence of infringement as shown in the Dr. Direen's declaration and demonstrated likelihood of success on Plaintiff's claim, the Court should dispense with the filing of a bond. However, to the extent the Court determines a bond is necessary, Plaintiff is willing to post a bond.

**G. The Requirements for Ex Parte Relief Have Been Met.**

"An application for an ex parte order shall be accompanied by a memorandum containing, ***if known***, the name, address, telephone number and e-mail address of **counsel for the opposing party**, the reasons for the seeking of an ex parte order,

and points and authorities in support thereof." L.R. 7-19 (Emph. added). "It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts **orally to advise counsel for all other parties**, ***if known***, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact **other counsel** and whether **any other counsel**, after such advice, opposes the application." L.R. 7-19.1 (Emph. added).

As set forth in the declaration of Farah Tabibkhoei filed concurrently herewith, Plaintiff's counsel lacks knowledge of whether Defendant has counsel. However, on October 21, 2026, Plaintiff's counsel attempted to contact Defendant by email to determine if Defendant had counsel in order to notify Defendant or its counsel, orally and in writing, of the date and substance of the proposed ex parte application. See Tabibkhoei Decl., ¶ 2, Ex. 1. Plaintiff's counsel is informed and believes Defendant's contact information is:

FUTURPALS CO., LIMITED d/b/a YOTURETOYS
Unit 519, Tianji Building, Xinggang Tongchuanghui
No. 6099 Bao'an Avenue, Xinhe Community, Fuhai Subdistrict,
Bao'an District
(Qianhai Cooperation Zone)
Shenzhen City
Guangdong Province 518103
CHINA
Email: service@yoturetoys.com
Phone: +86 188 4608 6270

Tabibkhoei Decl., ¶ 3. Plaintiff made reasonable, good faith efforts to find a fax number for Defendant to serve the *Ex Parte* Application via fax. *Id.* However, Plaintiff was not able to locate any fax number or U.S. address for Defendant,

despite reasonable, good faith efforts. *Id.* Plaintiff's counsel gave notice of this *ex parte* application to Defendant on October 23, 2026 by email. Tabibkhoei Decl., ¶¶ 5-6, Ex. 3. As of the filing of this ex parte application, Defendant has not indicated whether it opposes the ex parte application. Tabibkhoei Decl., ¶ 6.

## V. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's *Ex Parte* Application and issue a Temporary Restraining Order and an Order to Show Cause Regarding Why a Preliminary Injunction Should Not Be Issued.

Dated: October 23, 2026

DOMINIUM LAW, APC

By: /s/ Farah Tabibkhoei
Farah Tabibkhoei
*Attorneys for Plaintiff*
*Flycatcher Corp. Ltd.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Flycatcher Corp. Ltd., certifies that this brief contains 6,495 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 23, 2026

DOMINIUM LAW, APC

By: /s/ Farah Tabibkhoei
Farah Tabibkhoei
*Attorneys for Plaintiff*
*Flycatcher Corp. Ltd.*