Farah Tabibkhoei (SBN 266312)
**DOMINIUM LAW, APC**
5665 Wilshire Blvd. #1071
Los Angeles, CA 90036
Tel: (323) 364-4148
Farah@DominiumLaw.com

Efrem Schwalb (Admitted Pro Hac Vice)
Gary Serbin (Admitted Pro Hac Vice)
**KOFFSKY SCHWALB LLC**
500 Seventh Avenue, 8th Floor
New York, New York 10018
Tel: (646) 553-1590
eschwalb@koffskyschwalb.com
gserbin@koffskyschwalb.com

Attorneys for Plaintiff
Flycatcher Corp. Ltd.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLYCATCHER CORP. LTD., Plaintiff, vs. FUTURPALS CO., LIMITED d/b/a YOTURETOYS, Defendant. | Case No.: 2:23-cv-00859-GW-SK **DECLARATION OF HARRY G. DIREEN, JR., PH.D.** |

# DECLARATION OF HARRY G. DIREEN, Jr., Ph.D.

## I. INTRODUCTION

1. I, Harry G. Direen, Jr. Ph.D., have been retained by Plaintiff Flycatcher Corp. Ltd. ("Flycatcher") to offer opinions regarding infringement and validity claim 1 of U.S. Patent No. 12,688,791 ("the '791 patent").

2. I am over 18 years of age and am competent to make this declaration, which is based upon facts and matters within my own professional training and experience, my review of the exhibits discussed herein, or information provided by others. I am being compensated for my time in connection with this case at a rate of $710 per hour for work time and $325 per hour for travel time. This compensation is paid by Plaintiff to IMS Legal Services, which retained me for this engagement. My compensation is not dependent on the substance of my opinions or my testimony or the outcome of the above-identified proceeding.

3. I have been asked by counsel for Plaintiff to evaluate whether the BrightBuddies Smart Drawing Projector model i07Pro ("BrightBuddies"), manufactured by Futurpals Co., Ltd. and distributed/sold under the Yoturetoys brand name, directly infringes Claim 1 of the '791 patent.

4. This report is based on information currently available to me. I may continue my investigation as new information come to light and circumstances evolve. Thus, I may supplement my opinions and/or provide rebuttal opinions as needed. If asked by the Court or by the parties' attorneys, I would be able to testify regarding the opinions stated in this report.

## II. SUMMARY OF OPINIONS

5. It is my opinion that BrightBuddies infringes claim 1 of the ’791 patent and that the claim is valid.

## III. BACKGROUND AND QUALIFICATIONS

6. I have over 40 years of experience as an engineer designing and developing products in the electronics and software industry, as outlined in my attached CV. I have worked with the US Air Force Academy autonomous control of unmanned aerial vehicles (UAVs) and image processing. I also work on adaptive technologies for people with spinal cord injuries. This work involves embedded computer control systems and image processing. I designed a consumer grade in-car camera system which captured images/video from an outward facing camera and an in-car facing camera. The images were processed and stored on internal non-volatile memory whenever an event occurred. Stored images/video could be extracted from memory on the car camera system and transferred over Wi-Fi to separate computer system and displayed on that computer system. I am currently designing and developing image processing for new camera technology including the display of the processed images for a startup company.

7. I received a B.S. in Electrical Engineering from the University of California at Irvine and a Ph.D. in Electrical Engineering with a focus in Control Systems from the University of Colorado at Boulder. I am a registered professional engineer in the state of Colorado and a senior member of the IEEE. My expertise includes control systems, image processing, digital signal processing, embedded systems design and development, control of UAVs (Unmanned Aerial Vehicles), and product reverse engineering.

8. I have a broad base of knowledge in electronic and software systems gained in my career working on various product designs for a number of

companies. Throughout my career, I have designed and developed numerous embedded control and image processing systems. For example, for over ten years I worked with a research group at the U.S. Air Force Academy on the real-time control of UAVs and image processing used for target identification on UAVs (Unmanned Aerial Vehicles). I have designed, developed, and implemented image processing techniques to recognize targets on the ground. I developed the software to process and store the images in non-volatile memory onboard the UAV. I developed software to process, compress, and transmit images over RF communications channels to a ground station. I developed the software to receive, decompress, process and display the images from the UAV on the ground station display.

9. I have developed assistive technology for the disabled, which is designed to help people with spinal cord injuries drive wheelchairs, a car, or interact with other systems. The technology makes use of control systems with accelerometers and gyroscopes to pick up head movements and car movements. The system uses a camera with sophisticated image processing to identify patterns on a helmet which is then used to establish head location relative to the car. The image processing and sensor information is then fused using signal processing techniques to generate a precise head orientation, which is then used to control the car or other system. The system has an in-car display used to display key operational information. The system processed the camera images and sent them over Wi-Fi to a track-side computer for display.

10. I re-designed and developed an in-car camera system for a startup company. I designed and wrote substantial portions of the in-car camera firmware which captured video from two cameras along with GPS and accelerometer data. The video and metadata was captured, encoded, and stored on an internal SD Card (non-volatile memory) for events such as a collision. The system used Wi-Fi for uploading the events to a database server. I re-wrote

the software for transferring events from the in-car camera system to the database system. I also re-wrote the software for processing and displaying the events stored in the database system.

11. I have reverse-engineered a number of complex systems, including media players, modems, modem compression algorithms, Coriolis mass flow meters, blood analysis meters and a variety of other products. I have successfully discovered and analyzed complex digital signal processing algorithms and pertinent operations within these products.

12. I have taught engineering at the US Air Force Academy and taught undergraduate and graduate level classes at the University of Colorado, Colorado Springs (UCCS).

13. My employment history and field of expertise are described in my curriculum vitae attached as Exhibit A to this declaration.

14. The complete list of publication authored by me is attached to my curriculum vitae, Exhibit A.

15. The following is a list of all other cases in which I testified as an expert witness during the previous four years:

Testifying Expert at Trials

- Protegrity Corporation vs Voltage Security., CASE NO.: 3:10-cv-00755-RNC, April 15-17, 2014, Hartford CT.
- ITC Investigation No. 337-TA-1016, May 1 - 3, 2017, Washington DC
- Evicam International, Inc. vs Enforcement Video, LLC, Civil Action No.: 4:16-CV-105, July 10-14, 2017, Sherman, TX
- Perfect Co. vs Adaptics Ltd., Patent Invalidity, NO. 3:17-cv-05922-RBL, Markman Hearing, Nov. 30, 2018, Tacoma WA
- Phoenix Navigation Components vs Emcore Corporation, AAA Reference No.: 01-18-0002-2956, Jan. 8 – 12, 2019 New York City, NY.

- Dasha Alexander vs Eric Gustafson, File No. 2019-2476-DS-D, Berrien Country Trial Court – Family Division, St. Joseph, MI, Sept. 1, 2023
- Snaprays, LLC DBA Snappower v. American Tack & Hardware Co. Inc., Case No. 3:24-CV-01228-B, Dallas TX, May 10, 2026

Testifying a Deposition

- Protegrity Corporation vs Voltage Security., CASE NO.: 3:08-CV-618 (RNC), October 24, 2012 in Denver Colorado.
- Protegrity Corporation vs Ingrian Networks, Inc. / SafeNet Inc., CASE NO.: 3:10-CV-0755, January 14, 2013 in Denver Colorado.
- Epicor Software Co. vs Protegrity Corp. CBM2015-00002, July 22, 2015
- Square Inc. vs Protegrity Corp. CBM2014-00182, July 22, 2015
- ITC Investigation No. 337-TA-1016, March 7, 2017, Washington DC
- Mobile Tech. Inc. vs Invue Security Products, IPR Defense, IPR2016-00892, -00895, -00896, -00898, and -00899, March 15, 2017, Atlanta, GA
- Evicam International, Inc. vs Enforcement Video, LLC, Civil Action No.: 4:16-CV-105, May 17, 2017, Dallas, TX
- Evicam International, Inc. vs Enforcement Video, LLC, Civil Action No.: 4:16-CV-105, June 19, 2017, Dallas, TX
- Mobile Tech. Inc. vs Invue Security Products, IPR Defense, IPR2017-00344, Nov. 21, 2017, Atlanta, GA
- Perfect Co. vs Adaptics Ltd., Patent Invalidity, NO. 3:17-cv-05922-RBL, Feb. 27, 2018, San Francisco, CA
- Perfect Co. vs Adaptics Ltd., Patent Invalidity, NO. 3:14-cv-05976-RBL consolidated with NO. 3:17-cv-05922-RBL, Sept. 12, 2018, Colorado Springs, CO
- Lexmark International Inc. vs Universal Imaging Industries LLC. No. 8:18-cv-1047-T-02AEP, Remote deposition, Jan. 20, 2021

- Sweat Equity Partners, LLC vs Swoop Search LLC and Quinn Bottum, LLC,; Swoop Search LLC Cross-Claimant vs Sweat Equity Partners, LLC, TurbineOne, LLC, and Matthew Amacker, Case No. CGC-21-591702, Aug. 15, 2023
- Scientific Application and Research Associates (SARA), Inc. v. Zipline International Inc., Case No. 3:22-CV-04480-JSC, Oct. 18, 2024, Palo Alto CA.
- Snaprays, LLC DBA Snappower v. American Tack & Hardware Co. Inc., Case No. 3:24-CV-01228-B, Oct. 1, 2025, Colorado Springs, CO.
- Universal Connectivity Technologies LLC, v. Lenovo Group Limited, Civil Action No. 2:23-cv-449. Nov. 20, 2025, Atlanta, GA.

16. I have reviewed certain materials, including the following:

a. U.S. Patent No. 12,688,791 and its prosecution history (i.e., prosecution history of U.S. patent application serial No. 17/685,461, from which the 12,688,791 patent issued).

b. Prosecution history of U.S. patent application serial No. 16/310,861.

c. Prosecution history of international patent application No. PCT/IB2017/053645.

d. U.S. provisional patent application serial No. 62/352,061.

e. Disclosure of U.S. nonprovisional patent application serial No. 15/060,038, which is incorporated in the asserted US 12,688,791 patent by reference.

f. WO 2012/143747 publication.

g. US 2015/0367233A1 publication.

h. US 2012/0219935A1 publication.

i. US 2014/0030679A1 publication.
j. US 2015/0279226A1 publication.
k. US 2019/0337389A1 publication.
l. US6572378 patent.
m. U.S. patent application serial No. 15/060,038, which is incorporated by reference in the 12,688,791 patent.

17. I have also analyzed the physical BrightBuddies products. The two products evaluated have a date of production: 20260520 and Batch Number: 20260520Y01. Neither of the two products have a serial number. A product teardown was performed on one of the two products.

18. Below is a list of Exhibits to this declaration:

Exhibit A: My curriculum vitae.

Exhibit B: US 12,688,791B2 patent ("the '791 patent).

Exhibit C: Prosecution history of the '791 patent

Exhibit D: US 2014/0030679A1 publication (Wong).

Exhibit I: U.S. patent application serial No. 15/060,038, which is incorporated by reference in the '791 patent (Exhibit B).

Exhibit F: BrightBuddies Smart Drawing Projector User Manual

Exhibit G: Screenshot of a website https://www.panelook.com/CT024TN01_Innolux_2.4_LCM_overview_1629.html

Exhibit H: Screenshots of Zhuhai JieLli technology Co., Ltd.'s website at https://www.zh-jieli.com/#/products/details?id=24

Exhibit I: Screenshot from JieLi's website at https://github.com/Jieli-Tech/fw-Bootloader/blob/ff3b9299d1b94d834b995fd858b3f75e2faa9840/README.md

Exhibit J: Screenshot from gitlab.zh-jieli.com website at https://gitlab.zh-jieli.com/soundbox/novisualization/ac701n_soundbox_sdk/-/blob/335d6616a63257092f87f43cf2a6c3e59656116e/sdk/JL701N.cbp

Exhibit K: Screenshots from Shenzhen Yunxin Communication Technology Co., Ltd. website at www.yunthinker.com/aboutus.html

Exhibit L: Screenshots from Shenzhen Yunxin Communication Technology Co., Ltd.'s "Feature and Selection Guide for JL701N," available at https://www.yunthinker.com/newsshow_93.html

Exhibit M: Screenshots from Shenzhen Yunxin Communication Technology Co., Ltd.'s listing of JieLi's products, available at https://www.yunthinker.com/list_47.html

Exhibit N: Datasheet of JL7012C processor, available at https://www.yunthinker.com/static/upload/file/20241225/1735114388440269.pdf

Exhibit O: Datasheet of JL7012C processor, available at https://www.yunthinker.com/static/upload/file/20260604/1780537749148132.pdf

Exhibit P: Screenshots of Zhuhai JieLli technology Co., Ltd.'s website at https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/board_description/board_overview/index.html

Exhibit Q: Screenshots of JieLi's website https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/module_example/peripherals/index.html

Exhibit R: Screenshots of JieLi's website providing JieLi's SDCard software module https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/module_example/peripherals/sd.html

Exhibit S: Screenshots of JieLi's website providing JieLi's GPIO Interface software module https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/module_example/peripherals/gpio.html

Exhibit T: Screenshots of JieLi's website providing JieLi's LCD Interface software module https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/module_example/peripherals/lcd.html

## IV. LEGAL STANDARD

19. I am not a legal expert and offer no opinions of the law. However, I have been informed by counsel of the legal standards that apply with respect to determining infringement.

20. I have been informed that the specification of a patent includes the written description of one or more preferred embodiments of the invention, drawings, and figures, as well as one or more claims that point out and claim the subject matter of the invention. The claims define and measure the patent's scope. Each claim defines a separate invention.

21. I have been informed that a dependent claim incorporates each and every element of the claim from which it depends.

22. I have been informed that determination of infringement is a two-step process. First, the language of the claim(s) asserted against a device, method or structure accused of infringement, which I will refer to as the "accused" device or structure, is construed by the Court. Second, the accused device or structure is compared to the construed claim.

23. I have been informed that the words of a claim are generally given their ordinary and customary meaning to a person of ordinary skill in the art, at the time of the invention, and after reading the entire patent, including the specification and prosecution history, i.e., intrinsic record.

24. I have been informed that literal infringement is found when each and every element of at least one of the patent's claims, under the Court's construction, is literally found or practiced in the accused device, method or structure. My understanding of the law with respect to patent infringement is that an accused device, method or structure infringes a claim if it contains all the elements of the claim, regardless of whether or not there are additional elements in the accused device, method or structure not present in the claim.

25. I have also been informed that, under the doctrine of equivalents, an accused product may infringe a patent claim even if it does not literally satisfy every claim limitation, if the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed limitation. I have been further informed that the doctrine of equivalents is applied on a limitation-by-limitation basis, and that the question of equivalence is assessed from the perspective of a person of ordinary skill in the art at the time of the invention.

26. I have been informed that the burden of proof for proving patent infringement is by a preponderance of the evidence, which standard means that the accused device is established to be more likely to infringe than not to infringe a claim of the patents-in-suit.

27. I have also been informed that under 35 U.S.C. § 282, issued United States patents – including the asserted '791 patent – are presumed valid, and that the burden for proving claim invalidity is by clear and convincing evidence, which standard means that the evidence be highly and substantially more likely to be true than untrue, producing in the mind of factfinder a firm belief or conviction of the truth of the claim. This standard is higher than the preponderance-of-evidence standard but is lower than the beyond-a-reasonable-doubt standard that is used in criminal trials.

28. I have also been informed that the burden is on the challenger of patent's validity to come forward with evidence of invalidity, just as it would be at trial, and the patentee then has the burden of responding with contrary evidence, which may include analysis and argument.

29. I have also been informed that to obtain a preliminary injunction or a temporary restraining order, a patentee must show a likelihood of success on the merits, which includes demonstrating that the asserted claim(s) will likely withstand any invalidity challenge raised by Defendant.

## V. U.S. PATENT NO. 12,688,791

30. U.S. Patent No. 12,688,791 (the '791 patent) is entitled "Interactive Education Electronic Toy System," lists Shay Chen and Shacher Limor as inventors, and identifies Flycatcher Corp Ltd. as the assignee. It issued on July 21, 2026, from U.S. application Serial No. 17/685,461 ("the '461 Application"), which was filed on March 3, 2022. (Ex. B, Cover page). The '461 Application is a continuation-in-part of U.S. application No. 16/310,861 ("the '861 Application") filed on December 18, 2018, which is a continuation of international application No. PCT/IB2017/053645 ("the PCT'645 Application") filed on June 20, 2017, the latter claiming priority from U.S. provisional application No. 62/352,061 ("the Provisional '061 Application") filed on June 20, 2016. (Ex. B, Cover.)

31. The '791 patent teaches an interactive education electronic toy system and method for projecting a challenge (lesson), such as a drawing challenge, to a user. The '791 patent expressly incorporates by reference disclosure of U.S. patent application Serial No. 15/060,038 (Ex. E). (See, Ex. B., col. 15: 46-50.) Block diagrams for implementing various embodiments of the system are presented in Figures 1A and 1B of the '791 patent.

32. As it applies to Claim 1, which is the subject of Plaintiff's preliminary injunction and temporary restraining order motion, the '791 patent discloses

and teaches an embodiment in which the system breaks a drawing lesson into a sequential series of "sub-images" (individual steps or line/curve guides). The system lets a user select a drawing lesson from a challenge repository (digital library), processes the selected drawing lesson, and projects the step-by-step line/curve guides of the lesson onto a projection surface (e.g., paper) one after the other – allowing tracing each new line/curve directly over the existing drawing, progressively completing the full drawing.

33. Figures 1B and 2C of the '791 patent, reproduced below, will be used to explain the system and method disclosed in the patent.







34. Figure 2C is a simplified perspective view of an embodiment of a system implementing the block diagram of Figure 1B in operative orientation. As can be seen in Figure 2C of the '791 patent, the system includes a housing 118, illustrated as including a base portion 118a and a projector portion 118b. "The housing 118 typically houses the projecting device 102 and the controller 108. … In some embodiments, the housing 118 comprises a base portion 118a and a projector portion 118b. (Ex. B, col. 8:12-17.)

35. Figure 1B is a simplified block diagram representation of an embodiment of the invented system. As shown in Figure 1B, the system 100 includes a controller 108, a projecting device 102, and a challenge repository

106 storing drawing challenges to be presented to the user. "As seen in FIGS. lA and lB, system 100 includes at least one projector, or projecting device 102, adapted to project one or more challenges, or images associated with challenges, onto a projection surface 104. The system 100 further includes, or is functionally associated with, at least one challenge repository 106 storing challenges to be presented to the user." (Ex. B, col. 7:4-10.) Controller 108 controls operation of the system and is functionally associated with the projecting device 102 and with challenge repository 106. The controller includes a processor 110 and a non-transitory computer readable storage medium (non-transitory computer memory) 112, the latter storing software modules including instructions (software) to be executed by the processor. "A controller 108 is adapted to control operation of the system, and is functionally associated with projecting device 102 and with challenge repository 106. The controller may include, or remotely communicate with, a processor 110, which may be functionally associated with a non-transitory computer readable storage medium 112 storing software modules including instructions to be executed by the processor 110." (Ex. B, col. 7:11-18.) System 100 also includes user interface 130, which the '791 patent discloses as being disposed on an exterior surface of the housing and including physical buttons as input or output elements for navigating between challenges in the challenge repository and for navigating between steps of a multi-step challenge. "In some embodiments, the system may include a user interface 130, which may for example be disposed on an exterior surface of the housing 118, for example as illustrated in FIGS. 2C and 3. The user interface may include any suitable buttons and/or other input or output elements. For example, in the embodiment illustrated in FIG. 3, the user interface may include buttons 132a and 132b adapted for navigating between challenges in the challenge repository (moving to the previous and next challenge, respectively), buttons 134a and 134b for

navigating between steps of a multi-step challenge, as described in further detail hereinbelow, …" (Ex. B, col. 9:12-26.)

36. The '791 patent teaches that the modular, non-transitory computer memory 112 may store software instructions to enable the system to perform such functions as, receiving user's challenge selection, processing challenges, interpreting user input, etc. For example, the memory having stored software: i) to interpret input provided via the user interface (see, e.g., Ex. B, col. 3:54-62; also col. 15:17-21); ii) to receive a selection of a challenge to be projected by the projecting device (see, e.g., Ex. B, col. 3:26-27; also, col. 15:21-27); iii) to process the selected challenge in accordance with characteristics of at least one of the projecting device, the projecting surface, and ambient condition, to form a projectable challenge step for each challenge step (see, e.g., Ex. B, col. 3:28-36; also col. 5:1-20, col 8:28-53, col.15:57-62, col. 18:42-59); iv) to provide to the projecting device a first projectable challenge step corresponding to a first of multiple challenge steps of the selected challenge (see, e.g., Ex., B., Fig. 4B, Ref. 302; and v) in response to depression of a next-step button, to provide to the projecting device the next projectable challenge step corresponding to a next step of the selected challenge, according to a sequence of the multiple steps of the selected challenge (see, e.g., Ex. B, col. 9:11-26). Other embodiments of the invented system, all stemming from the simplified block diagrams presented in Figures 1A and 1B of the '791 patent and including imbedded hardware and software elements are also disclosed. In addition, the '791 patent incorporates by reference the disclosure of U.S. patent Application No. 15/060,038, entitled "Methods and Systems for Creating and Using Electronic Coloring Pages."

37. Accordingly, the art in question pertains to visual display systems incorporating embedded hardware and software controls.

## VI. PERSON OF ORDINARY SKILL IN THE ART

38. I have been informed that that factors pertinent to a determination of the level of ordinary skill in the art include the educational level of the inventor; the type of problems encountered in the art; prior art solutions to those problems; rapidity with which innovations are made; sophistication of the technology; and educational level of active workers in the field. I also understand that not all such factors may be present in every case, and one or more of these or other factors may predominate in a particular case.

39. The art in question relates to products containing embedded hardware and software. In determining the level of ordinary skill in the art, I considered the sophistication of the technology, educational level of people working in the field, rapidity with which innovations are made, the type of problems encountered in the art, and prior art solutions of those problems. Applying the above factors, in my opinion, a person of ordinary skill in the art ("POSITA") would have at least a bachelor's degree in electrical or computer engineering and several years of experience designing visual display systems containing user interfaces and embedded hardware and software controls or an equivalent level of education and experience.

40. In view of the above, based on my education and experience, which includes design of visual display systems, consumer electronics, and familiarity with projector technology, I consider myself to be a person of at least ordinary skill in the art.

41. When analyzing the invention in claim 1 of the '791 patent, I attempted to look at it from the point of view of one of ordinary skill in the art around the timeframe of the invention, which is at least as early as June 20, 2017, filing date of the international PCT/IB2017/053645 from which the '791 patent derives priority.

## VII. PROSECUTION HISTORY SUMMARY OF THE '791 PATENT

42. As filed on March 3, 2022, the '461 Application included nineteen claims, with claim 1 being an independent apparatus claim and claims 2-19 being dependent apparatus claims. (see, Ex. C, pp. 55-58.)[1]

43. On July 14, 2025, the Examiner issued a non-final Office Action, rejecting all then-pending claims as follows: (i) claims 1-19 were rejected under 35 U.S.C. 112(b) as being indefinite; (ii) claims 1-4 and 9-19 were rejected under 35 U.S.C. 103 as being unpatentable over Wong (US2014/0030679, hereafter "**Wong**") in view of Harrison et al. (US2015/0279226, hereinafter "**Harrison**"); and (iii) claims 5-8 were rejected under 35 U.S.C. 103 as being unpatentable over Wong in view of Harrison, and further in view of Barversten et al. (US2019/0337389, hereinafter "**Barvesten**"). (see, Ex. C, pp. 82, 84-,100. )

44. Applicant-initiated telephonic interview was held on November 3, 2025, during which the parties discussed 35 U.S.C. 103 issues. Applicant explained the invention's "challenge step" and how it differed from the sequence of brush strokes disclosed by **Wong**. Applicant further discussed, *inter alia*, proposed claim amendment regarding the processor breaking a drawing (challenge) into each step of drawing, and physical buttons in the housing to move to the next projectable step in sequence. Although no agreement was reached, the Examiner indicated that claim amendments relating to the processor breaking the drawing (challenge) into steps in sequence may be beneficial to expedite prosecution. Summary of November 3, 2025, interview was mailed on November 12, 2025. (Ex. C, pp. 153-154.)

---

[1] All references to "p." or "pp." within an exhibit refer to the electronic page numbers of the PDF document.

45. In the meantime, on November 4, 2025, following the 11/3/2025 interview, Applicant filed a response to the 7/14/2025 Office Action. (Ex. C, pp. 120-152.) In it, Applicant:

(a) amended claim 1 to clarify the subject matter for which protection is sought, and to overcome the rejection under 35 U.S.C. 112(b) for indefiniteness;

(b) Amended claims 5, 18, and 19 in accordance with the amendments to claim 1;

(c) Amended claim 6 to clarify the subject matter for which protection is sought;

(d) Cancelled claims 7, 9-15, and 17 without prejudice; and

(e) Added new apparatus claims 20-27, of which claim 21 was independent. (See, Ex. C, p. 131.)

46. Claim 1 was amended as follows:

1. (**Currently Amended**) A system for providing a drawing challenge comprising a plurality of challenge steps to a user, in a step-by-step manner, the system being associated with at least one challenge repository and a projection surface, the system comprising:

a housing;

a user interface disposed in said housing, said user interface including a plurality of physical buttons, the plurality of physical buttons including a next-step button;

at least one projecting device accommodated within said housing and adapted to project each of said plurality of challenge steps onto the projection surface according to a sequence of said plurality of challenge steps;

a controller accommodated within said housing, said controller including:

a processor functionally associated with the at least one challenge repository and with said at least one projecting device; and

a non-transitory computer readable storage medium storing software modules including instructions to be executed by said processor, said non-transitory computer readable storage medium having stored:

instructions to interpret input provided via said user interface;

instructions to ~~automatically~~ receive a selection of ~~a selected~~ said challenge including a said plurality of challenge steps to be projected by said projecting device~~, based on a user profile of the user, said user profile including information about the user, said information including at least one of an age of the user, a challenge completion level of the user, information relating to educational~~

> ~~needs of the user, information relating to therapeutic needs of the user, and user preferences~~, wherein said challenge is a drawing challenge or a writing challenge, and each of said plurality of challenge steps includes one or more individual lines and/or curves; and
>
> ~~a challenge preparation module including~~ instructions to process said selected challenge in accordance with characteristics of at least one of said projecting device, ~~a~~said projection surface, and ambient conditions, to form, for each challenge step of the ~~selected~~ challenge, a projectable challenge step for projection by said at least one projecting device; ~~and~~
>
> instructions to provide a first ~~each said~~ projectable challenge step corresponding to a first of said plurality of challenge steps to said projecting device for projecting thereof ~~according to said sequence of said plurality of challenge steps~~; and
>
> instructions, to be carried out in response to receipt of a next-step input indicating depression of the next-step button of the user interface, to provide a next projectable challenge step, corresponding to a next step according to said sequence of said plurality of challenge step, to said projecting device for projecting thereof
>
> ~~a housing accommodating said at least one projecting device and said controller~~.

(Ex. C, pp. 123-124.)

47. In the "Remarks" section of the 11/4/2025 response, while distinguishing claim 1 from the prior art, from the **Wong** reference in particular, Applicant elaborated on the following distinguishing points:

a. the term "challenge step", as recited in the claims, is not equivalent to a "repetition" of an exercise as disclosed by Wong;
b. a sequence of steps requires an ordering of the steps, as opposed to repetitions that are all the same and have no specific order;
c. the phrase "sequence to achieve artwork" of Wong, and showing a video for this purpose, are distinct from projecting a "plurality of challenge steps according to a sequence" as required in the claim;
d. the challenge preparation module of Wong is a preparatory action, which occurs prior to initiation of the projections thereof, and is not carried out separately from each challenge step; and

e. the Examiner's interpretation of the term "challenge step" as being equivalent to repetitions is unreasonably broad.

(Ex. C, p. 134-135.)

48. In addition, Applicant explained that the added claim 1 language "wherein said challenge is a drawing challenge or a writing challenge, and each of said plurality of challenge steps includes one or more individual lines and/or curves" specifies that the claimed "challenge steps" are each a portion of the entire challenge and are not repetitions as disclosed by **Wong**. (Ex. C, p. 145.)

49. A Notice of Allowance and Fee(s) Due was mailed on April 24, 2026. (See, Ex. C, p. 190.) It included a Notice of Allowability, stating that claims 1-6, 8, 16, and 18-27 were allowed. (Ex. C, p. 194.) The Notice of Allowability included Examiner's amendment to claims 1, 5, and 21, and Examiner's Reasons for Allowance, in which the Examiner stated, *inter alia*, that the "amendments to the claims taken with the Applicant Arguments submitted on 11/4/2025 are found convincing." (Ex. C, pp. 195-196.)

50. Claims 1-6, 8, 16, and 18-27 of the '461 application issued as claims 1-18 of the '791 patent. (See, Ex. C, p. 204.) As issued, claim 1 recites:

> "A system for providing a drawing challenge comprising a plurality of challenge steps to a user, in a step-by-step manner, the system being associated with at least one challenge repository and a projection surface, the system comprising:
> a housing;
> a user interface disposed in said housing, said user interface including a plurality of physical buttons, the plurality of physical buttons including a next-step button;
> at least one projecting device accommodated within said housing and adapted to project each of said plurality of challenge steps onto the projection surface according to a sequence of said plurality of challenge steps;
> a controller accommodated within said housing, said controller including:

a processor functionally associated with the at least one challenge repository and with said at least one projecting device; and

a non-transitory computer readable storage medium storing software modules including instructions to be executed by said processor, said non-transitory computer readable storage medium having stored:

instructions to interpret input provided via said user interface;

instructions to receive a selection of said challenge including a said plurality of challenge steps to be projected by said projecting device, wherein said challenge is a drawing challenge or a writing challenge, and each of said plurality of challenge steps includes one or more individual lines and/or curves; and

instructions to process said selected challenge in accordance with characteristics of at least one of said projecting device, said projection surface, and ambient conditions, to form, for each challenge step of the challenge, a projectable challenge step for projection by said at least one projecting device;

instructions to provide a first projectable challenge step corresponding to a first of said plurality of challenge steps to said projecting device for projecting thereof; and

instructions, to be carried out in response to receipt of a next-step input indicating depression of the next-step button of the user interface, to provide a next projectable challenge step, corresponding to a next step according to said sequence of said plurality of challenge steps, to said projecting device for projecting thereof." (Ex. B, col. 21: 40 - col. 22:22.)

## VIII. CLAIM CONSTRUCTION

51. For the purposes of Plaintiff's motion for Preliminary Injunction and Temporary Restraining Order, I have reviewed claim 1 of the '791 patent and evaluated it according to its plain and ordinary meaning as understood by a POSITA at the time of the invention in light of the specification and

prosecution history. In my opinion, no terms require special construction at this stage, and no formal construction is necessary to resolve this motion.

## IX. INFRINGEMENT ANALYSIS

52. The table below sets forth my analysis of infringement of claim 1 of the ’791 patent by the accused BrightBuddies product. (Labels were added to claim elements for convenience.) In my opinion, BrightBuddies literally infringes claim 1 under any reasonable construction of its terms, including the plain and ordinary meaning as understood by a POSITA. To the extent any element is found not to be literally present, it is my further opinion that BrightBuddies infringes under the doctrine of equivalents, as set forth following the claim chart below.

| Claim Element | Claim Feature | Infringement |
|---|---|---|
| 1(preamble). | A system for providing a drawing challenge comprising a plurality of challenge steps to a user, in a step-by-step manner, | Yoturetoys Smart Drawing Projector model i07Pro, also known as a Futurepals BrightBuddies, “i07Pro or BrightBuddies”. I understand that Yoturetoys is an e-commerce storefront of Futurepals Co. Ltd. References website: https://www.yoturetoys.com/products/smart-drawing-projector. |

| | | |
|---|---|---|
| | the system being associated with at least one challenge repository and a projection surface, the system comprising: | BrightBuddies is a system for providing a drawing challenge comprising a plurality of challenge steps to a user, in a step-by-step manner, the system being associated with at least one challenge repository and a projection surface.<br><br>The figures below show a Yoturetoys Smart Drawing Projector, Model i07Pro, Made in China (BrightBuddies).<br><br><br><br>**Figure 1 BrightBuddies or Yoturetoys Package** |



**Figure 2 BrightBuddies Picture**




**Figure 3 BrightBuddies (or Yoturetoys) Model i07Pro**

Included with BrightBuddies is a manual (Ex. F). Figure 4, below, shows the cover of the manual.

| | | |
|---|---|---|
| | | <br>**Figure 4, BrightBuddies Manual Cover**(Ex. F, p. 1Cover)<br><br>On page 2 of the manual the user interface “Button Functions” are described as: 1) Go Forward a Step; 2) Short press Turn on / Long Press Turn Off / Go to home; 3) Go Back a Step; 4) Next Drawing; 5) Autoplay/ Long Press Turn on/off Voice; 6) Previous Drawing. |




**Figure 5 BrightBuddies Manual Page 2**

(Ex. F, p. 1)

On page 3 of the manual, under "Operating Instructions", item 1, it states: "The device comes pre-installed with 50 high-precision painting collections".

**OPERATING INSTRUCTIONS**

1. Plug in the power and turn on the device to access the painting function.

(1) The device comes pre-installed with 50 high-precision painting collections.

(2) The accompanying app offers cloud-based art library updates, allowing users to download over 100 painting series and synchronize them to the device.

(3) The device locally supports a maximum storage of 100 collections. When new additions exceed the capacity, the system will automatically overwrite older collections on a "first-in, first-out" basis, ensuring users always have access to the latest resources.

**Figure 6 BrightBuddies Manual Page 3**

(Ex. F, p. 3)

On page 4 of the manual, under "Usage Guide", in column 1 "Step-by-step Tracing", there is an image with caption: "Select a pre-

loaded image", and an image with caption: "Step-by-step instructions are projected on your paper".




**Figure 7 BrightBuddies Manual Page 4**

(Ex. F, p. 3)

As shown below, BrightBuddies contains a Micro-SDCard, which is the challenge repository storing multiple challenges (painting/drawing collections) in directories (or folders) labeled 0000, 0001, 0002, …. Each directory includes a set of images making up a drawing challenge (drawing collection) that is composed of multiple steps.

The figure below shows the Micro-SDCard directory structure on the left side. In the middle left are a set of thumbnail images

| | | |
|---|---|---|
| | | showing the cover image (00.jpg) and drawing steps (01.jpg - 0.7.jpg) of the drawing challenge contained in directory 0000. The picture on the right shows a preview of the cover image (thumbnail 00.jpg) of the drawing challenge contained in directory 0000.<br><br><br><br>**Figure 8 BrightBuddies Micro-SDCard Challenge Repository**<br><br>The figure below shows BrightBuddies projecting several cover images of drawing challenges contained in directories on the Micro-SDCard.<br><br><br>**Figure 9 BrightBuddies Projecting Drawing Challenges**<br><br>The figure below shows BrightBuddies projecting a sequence of drawing challenge |

| | | |
|---|---|---|
| | | steps of the "fish" drawing challenge in directory 0001. The steps are sequenced through by pressing a Go Forward a Step button.<br><br>**Figure 10 BrightBuddies Projecting a Sequence of Drawing Challenge Steps** |
| 1(a) | a housing; | BrightBuddies has a housing as seen in the figure below.<br><br><br>**Figure 11 BrightBuddies Manual Page 1 showing a Housing** (Ex. F, p. 2) |

| | | |
|---|---|---|
| 1(b) | a user interface disposed in said housing, said user interface including a plurality of physical buttons, the plurality of physical buttons including a next-step button; | BrightBuddies has a user interface disposed in said housing. The user interface has multiple physical buttons as shown in Figure 5 above and the picture in Figure 12 below. As referenced in the BrighBuddies user manual (Ref. Figure 5) and shown in Figure 12, the physical buttons include a next-step (or Go Forward a Step) button.   **Figure 12 BrightBuddies User Interface** |
| 1(c) | at least one projecting device accommodated within said housing and adapted to project each of said plurality of | Within the housing of BrightBuddies is a projecting device adapted to project a sequence of each of the challenge steps of the said plurality steps onto the projection surface according to a sequence of said plurality of challenge steps. |

| | | |
|---|---|---|
| | challenge steps onto the projection surface according to a sequence of said plurality of challenge steps; | Figures 13 and 14 below show the projecting device contained within the housing.<br><br>**Figure 13 BrightBuddies Projecting Device**<br><br><br>**Figure 14 Projection Device Details** |

| | | |
|---|---|---|
| | | Figure 10 above shows the BrightBuddies projecting a sequence of each of the challenge steps of the said plurality onto the projection surface according to a sequence of said plurality of challenge steps.<br><br>The color LCD screen in the projection device has the part number CT024TN01, see the picture in Figure 15 below.<br><br><br><br>**Figure 15 Color LCD Screen Part Number CT024TN01**<br><br>A closeup picture of the LCD screen (Figure 16 below) shows the individual pixels in the display. Counting the pixels in a section of the display and extrapolating to the whole screen results in a matrix having 240 |

| | | |
|---|---|---|
| | | columns by x320 rows of pixels. Each pixel is made up of one Red, one Green, and one Blue sub-pixel. Color images are made from varing the intensity of the Red, Green, and Blue sub-pixels of each pixel. Images to be displayed by the LCD screen must be formated to meet the characteristics of the CT024TN01 LCD screen in order to be displayed properly (see Figures 9, 10, 13, & 14).   **Figure 16 BrightBuddies LCD Screen Pixel Resolution** An internet search indicates that the CT024TN01 is a Chimei Innolux 2.4-inch LCD screen and confirms that the screen has 240 x 320 pixels. (See, Ex. G) |

| | | |
|---|---|---|
| 1(d) | a controller accommodated within said housing, said controller including: | Figure 17 below shows a controller (control board) contained within the housing of the BrightBuddies.<br><br>**Figure 17 Controller Contained in the BrightBuddies Housing** |
| 1(d).1 | a processor functionally associated with the at least one challenge repository and with said at least one projecting device; and | The controller includes a processor functionally associated with the at least one challenge repository and with said at least one projecting device.<br><br>As a preliminary matter, regardless of which chips are included on the control board, BrightBuddies would simply not function if there was not a CPU and instructions stored in non-volatile memory to operate the system. Looking at the specifics of the BrightBuddies Controller, as shown in Figure 18 below, it |

| | | |
|---|---|---|
| | | contains a Processor SoC (System on Chip). On the back of the Controller (control board) is a Micro-SDCard (see Figures 18 and 20 below), which is the challenge repository. The Micro-SDCard is connected to the Processor SoC via traces on the control board.<br>As shown in Figure 18, the control board also has an LCD1 connector that connects to the projecting device LCD screen via a flexible flat cable. The Processor SoC connects to the LCD1 connector via traces on the control board, which means the Processor SoC is connected to the projecting device LCD screen.<br><br><br>**Figure 18 BrightBuddies Controller containing a Processor SoC Associated with Challenge Repository and Projecting Device** |

Figures 19 and 20 below provide another view of the controller (front and back), with Figure 19 showing a clearer view of the processor. The processor part number is: HOEA12F. The HOEA12F appears to be the manufacture's internal part number. As explained below, the processor presents itself as a Zhuhai Jieli Technology (Jieli) JL701N series processor SoC.




**Figure 19 BrightBuddies Controller (Front) with Processor SoC**

| | | |
|---|---|---|
| | |   **Figure 20 BrightBuddies Controller (Back) showing the Micro-SDCard** The BrightBuddies Smart Drawing Projector can be connected to a BrightBuddies App on a smart phone or tablet over Bluetooth.  OPERATING INSTRUCTIONS 1.Plug in the power and turn on the device to access the painting function. (1) The device comes pre-installed with 50 high-precision painting collections. (2) The accompanying app offers cloud-based art library updates, allowing users to download over 100 painting series and synchronize them to the device. (3) The device locally supports a maximum storage of 100 collections. When new additions exceed the capacity, the system will automatically overwrite older collections on a "first-in, first-out" basis, ensuring users always have access to the latest resources. 2.To unlock all features, download the app to your smartphone or tablet. (1) Search "BrightBuddies" on the App Store or Google Play,or scan the QR code (right) (2) Connect the device. a. Register/Log in b. Enable Bluetooth on your phone or tablet c. Place your phone or tablet near the Drawing Projector d. Connection successful & Start drawing 3 **Figure 21, BrightBuddies Manual Pg. 3 Bluetooth Interface** (Ex. F, p. 3) A Bluetooth sniffer (nRF52840 USB dongle coupled with Wireshark software) was used to monitor Bluetooth information sent from |

| | | |
|---|---|---|
| | | the BrightBuddie to a smart phone during the Bluetooth pairing process. The following information was obtained from that process:<br><br>LL_VERSION_IND (device -> phone)<br>raw PDU 0b 06 0c 0c d6 05 72 07<br><br>**Meaning of the PDU Bytes:**<br>0b LL header: LLID = 0b11 (LL Control PDU), SN = 1<br>06 payload length = 6<br>0c opcode = LL_VERSION_IND<br>0c VersNr = Bluetooth Core Specification 5.3<br>d6 05 CompId = 0x05D6 -> ZHUHAI JIELI TECHNOLOGY CO.,LTD<br>72 07 SubVersNr = 0x0772 (vendor-defined; NOT a part number)<br><br>LL_VERSION_IND is a Link Layer control PDU defined in the Bluetooth Core Specification, Volume 6, Part B, §2.4.2.13, available at https://www.bluetooth.com/wp-content/uploads/Files/Specification/HTML/Core-54/out/en/index-en.html. It carries exactly three fields, and the specification defines them as: **VersNr** the version of the Bluetooth Controller specification; **CompId** the company identifier of the manufacturer of the |

| | | |
|---|---|---|
| | | Bluetooth Controller; and **SubVersNr** a unique value for each implementation or revision of an implementation of the Bluetooth Controller.<br><br>Company identifiers are unique numbers that the Bluetooth SIG assigns to member companies. The following website provides information on how a company requests and obtains a Bluetooth Company Identifier: https://support.bluetooth.com/hc/en-us/articles/360062030092-Requesting-Assigned-Numbers. The Zhuhai Jieli technology Co., Ltd. company identifier can be found on page 258 of the Bluetooth Assigned Numbers document, version 2006-09-04 available at https://www.bluetooth.com/wp-content/uploads/Files/Specification/HTML/Assigned_Numbers/out/en/Assigned_Numbers.pdf.<br><br>There is also an FCC Report for the model i07PRO Smart Drawing Projector that can be found at: https://fccid.io/2BPDZ-I07PRO. The antenna specification section of the FCC Report. available at https://fccid.io/2BPDZ-I07PRO/Test-Report/Antenna-specification- |

8320978, shows the same antenna as used on the BrightBuddies control board (reference the picture of ANT1 in Figure 19) and identifies the manufacturer as Zhuhai Jieli Technology Co., Ltd. (See Figure 22 below.)

**Inverted F Antenna Specification**

Summary

| ITEM | ANT SPEC | | | | | |
|---|---|---|---|---|---|---|
| Model Name | 2.4G ANT | | | | | |
| Center Frequency | Horizontal | | | Vertical | | |
| | 2400MHz | 2450MHz | 2500MHz | 2400MHz | 2450MHz | 2500MHz |
| | -1.26 | -0.76 | -0.58 | -5.25 | -2.46 | -1.86 |
| MAX. Gain | -0.58dBi | | | | | |
| Polarization | Horizontal and Vertical | | | | | |
| Azimuth Beam Pattern | Omni-directional | | | | | |
| Impedance | 50 Ohm | | | | | |
| Antenna Length | 38.20mm | | | | | |
| Manufacture | ZHUHAI JIELI TECHNOLOGY CO.,LTD No. 333, Kexing Road, Xiangzhou District, Zhuhai City | | | | | |

Antenna Photo & Length (mm)




**Figure 22 excerpt from FCC Report for the model i07PRO Smart Drawing Projector**

| | | |
|---|---|---|
| | | USB devices provide enumeration information that can be read over the USB interface. The BrightBuddies USB was connected to a Windows computer. Here is some of the enumeration information read from the BrightBuddies USB interface, including USB VID (USB vendor identifier) and SCSI vendor fields:<br><br>USB VID:PID 4C4A:4E55<br>USB serial 433132373034392E → ASCII C127049.<br>SCSI vendor / product / rev BR28 / UDISK / 1.00<br>Windows friendly name BR28 UDISK USB Device<br>Port Port#0007.Hub#0001 (PCIROOT(0)#PCI(1400)#USBROOT(0)#USB(7)) — root USB 3 hub, HS07<br>Capacity 480 MB FAT32, no volume label<br><br>The USB device enumerates the VID: 0x4C4A. USB descriptors are little-endian (you reverse the byte order) to "4A 4C". In ASCII hexadecimal number 4A represents 'J' and 4C represents 'L', so the USB VID represents "JL". As confirmed by Zhuhai JieLi technology Co., Ltd.'s own website, at https://www.zh- |

| | | |
|---|---|---|
| | | jieli.com/#/products/details?id=24 (see Ex. H), "JL" is an abbreviation for the company's name.<br><br>JieLi's official GitHub organization publishes fw-Bootloader, a customized bootloader for its chip lines. Its README, available at https://github.com/Jieli-Tech/fw-Bootloader/blob/ff3b9299d1b94d834b995fd858b3f75e2faa9840/README.md contains an explicit SDK-to-bootloader mapping table (see Ex. I). In the table, **br28** bootloader is mapped to AC701N.<br>As evidenced by https://gitlab.zh-jieli.com/soundbox/novisualization/ac701n_soundbox_sdk/-/blob/335d6616a63257092f87f43cf2a6c3e59656116e/sdk/JL701N.cbp website, JieLi's ac701n soundbox sdk ties AC701N to JL701N chip series (see Ex. J). Line 5 of the JL701N.cbp document is: "<Option title="**JL701N**". Line 9 is: "<Option output=**cpu/br28**/tools/skd.elf …" (emphasis added). Accordingly, the USB SCSI number BR28 is tied to the JieLi JL701N series of processors. |

| | | |
|---|---|---|
| | | Next, looking at the HOEA12F processor on the control board, the chip is in a 52-pin quad package. A website of JieLi's first-level distributor, Shenzhen Yunxin Communication Technology Co., Ltd. at www.yunthinker.com/aboutus.html (see Ex. K), contains a Feature and Selection Guide for JL701N Chip Series – Yunxin: https://www.yunthinker.com/newsshow_93.html (Ex. L). For the 52-pin quad package (QFN52), the guide lists a JL7012F6 chip. Distributor's second website, https://www.yunthinker.com/list_47.html (See, Ex. M) also publishes JL701N products. This website lists the following JL107N processors: JL7018M, JL7018F, JL7016G, JL7016C, JL7012C, JL7012F, and a JL7014F. Only the JL7012C, JL7012F devices have 52 pin packages. The JL7012C datasheet is provided in Exhibit S and the JL7012F datasheet is provided in Exhibit T. Block diagrams of the two chips are shown below. |




**Figure 1-1 JL7012C Block Diagram** (Ex. NEx. N, p. 4)




**Figure 1-1 JL7012F Block Diagram**

(Ex. O, p. 4)

As can be seen from the above block diagrams and the features list on the datasheets for the JL7012C and JL7012F devices, both have a CPU (central processing unit) with 32 bit Dual-Core DSP. Both have Memory: on-chip 640KB SRAM and built-in Flash. Both have Bluetooth and USB. Only

| | | |
|---|---|---|
| | | the JL7012F, however, has a Graphics module listed in the features with: 2D Graphics accelerator; support crop, scale, rotation process; support multiple data format graphics; SPI and QSPI display driver.<br>The HOEA12F, which has the same "12F" ending as the JL7012F, connects to the LCD screen through an SPI interface, indicating that HOEA12F is in fact a JL7012F processor.<br><br>Moreover, as noted, the HOEA12F processor is in a 52-pin quad package with 13 pins on each side. The pins are numbered in a counterclockwise direction, starting in the upper left-hand corner where there is a white dot above the HOEA12F part number. The pins on the HOEA12F SoC were traced to modules and connectors on the BrightBuddies Controller. A description of the BrightBodies' modules and connection are given below:<br><br>• The BrightBuddies has a USB-C connector on a separate PCB that connects to J2 on the control board (see picture above). The USB +5 Volts connects to the HOEA12F processor on pin 5. The USB – or ground pin connects to the ground plane on the |

| | | |
|---|---|---|
| | | control board and pin 2 of the HOEA12F. The USB DM and DP (Data Minus and Plus) signals connects to the HOEA12F on pins 25 and 26.<br>• Pins 15 and 16 of the HOEA12F connect to a 24 MHz Crystal Oscillator, Y1. A crystal oscillator is used to generate the clock signals required by the different modules within the processor.<br>• Pin 14 is connected to ANT1 (a Bluetooth antenna) through capacitor C17. The BrightBuddies has a Bluetooth interface. As there are no other Bluetooth modules contained on the control board or elsewhere within the BrightBuddies, the HOEA12F must contain a Bluetooth module. The BrightBuddies has an FCC filing for the Bluetooth: https://fccid.io/2BPDZ-I07PRO.<br>• The user interface buttons press switches 1 through 6 on the PCB shown in Figure 12 above. The PCB with switches is connected to the control board via a flat ribbon cable to connector FPC2. The user interface switches 1 to 6 are connected to the HOEA12F processor on pins 17 to 22.<br>• The LCD screen, which is part of the BrightBuddies projector, is connected to the control board via a flat ribbon cable on connector LCD1. A SPI (Serial Peripheral Interface) is used to communicate between the HOEA12F processor and the LCD screen. The back of the control board labels the SPI signals: CLK, CS, DO, DI. There is |

| | | |
|---|---|---|
| | | also an LEDK, RESET, C/D, 3.3V and GND signals and power to the LCD screen. The mapping of the signals to the HOEA12F processor pins are: CLK – p31, CS – p27, RESET – p28, C/D – p32, DO – p29, and D1 – p30.<br>• The BrightBuddies has a micro-SDCard with connector SD1 mounted on the back of the control board. The micro-SDCard connector has 9 pins with pin 1 on the right as shown in the picture of the back of the control board. The micro-SDCard pins with signal names are connected to the HOEA12F processor pins: sdc-p3 (CMD) to p51, sdc-p5 (CLK) to p50, sdc-p7 (DAT0) to pin 52, sdc-p4 (VDD) to pin 43.<br><br>Figure 23 below shows many of the connections of modules within the BrightBuddies to the HOEA12F processor located on the controller. The pin names shown in the diagram come from the pin assignment definition drawing in the JL7012F datasheet (see Ex. O, p. 5). The JL7012F also datasheet provides more detailed descriptions of the pins (see Ex. O, pp. 6-10). The BrightBuddies connections to the HOEA12F processor align with the pin functions of the JL7012F processor. |




**Figure 23 BrightBoddies Processor SoC Pin Connections**

The functions of the module and circuit connections to the HOEA12F processor noted above and in the diagram map to the functions described in the JL7012F datasheet. There are no standards for pinouts and functions of pins on processors between different processor manufactures. This constitutes further evidence that the HOEA12F is a JL7012F processor.

Figure below repeats the block diagram of the JL7012F. From the block diagram we see that the processor contains CPU (Central Processing Unit); a Graphic system including an LCD driver; a Bluetooth Module; memory in the form of ROM, SRAM, and Flash; a

| | | |
|---|---|---|
| | | USB peripheral; GPIO (General Purpose IO); and a variety of other modules and features. Modern processors, such as the JL7012F, that support a wide range of features and modules on a single integrated circuit are referred to as SoC (System on Chip). |




**Figure 1-1 JL7012F Block Diagram**

**Figure 24 Processor SoC Block Diagram**

The HOEA12F processor presents itself as a JieLi JL7012 series processor, with a CPU, non-volatile memory (ROM / Flash), RAM, a Bluetooth module, a USB Module, a Micro-SDCard interface, a SPI module interface to the LCD, and GPIO. There are no other processors or devices on the BrightBuddies controller that are connected to the USB, the Bluetooth Antenna, the LCD, and the SDCard.

| | | |
|---|---|---|
| | | The '791 claims and claim 1 specifically require a controller including a processor. Even if HOEA12F were not a JL7012 processor, because the BrightBuddies Controller would not function without a processor and non-volatile memory, the HOEA12F would still meet the "processor" limitation of claim 1(d).1. |
| 1(d). 2 | a non-transitory computer readable storage medium storing software modules including instructions to be executed by said processor, said non-transitory computer readable storage medium having stored: | The HOEA12F processor on the BrightBuddies controller contains non-transitory computer readable storage (ROM or Flash or both) which stores software modules including instructions to be executed in the CPU on the HOEA12F processor (reference 1(d).1 above).<br><br>All processors require instructions to be executed by the processor to accomplish operational aspects of the product. The BrightBuddies projector system simply would not operate without software instructions that are executed by the processor. The software must be stored in non-transitory memory such as ROM (Read-Only-Memory) or Flash memory, otherwise the first time power is removed from BrightBuddies, the software |

| | | |
|---|---|---|
| | | would be lost and the product would not operate.<br><br>Software for any significant modern system, such as the BrightBuddies device, is written in modules. JieLi has a website, at https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/board_description/board_overview/index.html (Ex. P), where they provide and instruct on use of their software modules for their processors and development boards. They provide software module routines for things like Peripheral components, Bluetooth, User Interface (UI) and other items. Under the Peripheral components, at https://doc.zh-jieli.com/AC79/zh-cn/release_v1.1.0/module_example/peripherals/index.html (Ex. Q), there is a software module for accessing data on a SD card (see Ex. R). There is a module for GPIO interface (see Ex. S). There is a software module for an LCD interface (see Ex. T). JieLi provides several other software modules in this same repository.<br>Regardless of whether the BrightBuddies projector uses any of the JieLi software modules, the point is that software for |

| | | |
|---|---|---|
| | | products like the BrightBuddies projector is developed in modules.<br><br>BrightBuddies non-transitory computer readable storage that includes instructions to be executed by the HOEA12F processor on the controller. All processors require instructions to be executed by the processor to accomplish the operational aspects of the product. |
| 1(d).2.1 | instructions to interpret input provided via said user interface; | As shown in claim element 1(d).1 above, the user interface buttons press switches 1 through 6 on the PCB shown in Figure 12. The PCB with switches is connected to the control board via a flat ribbon cable to connector FPC2 (Figures 18 and 19). The user interface switches 1 to 6 are connected to the HOEA12F processor on pins 17 to 22. These pins are GPIO (General Purpose Input/Output) pins on the HOEA12F processor (Figure 23). The HOEA12F processor monitors these pins for a change in logic level when a switch is pressed. Instructions in the HOEA12F processor interpret these logic level changes. The BrightBuddies' manual (Figure 5) describes |

| | | |
|---|---|---|
| | | how pushes of the buttons are interpreted by software instructions. For instance, the manual states that button 2 has multiple functions: Short press Turn on / Long Press Turn Off / Go to home (Figure 5). Therefore, the HOEA12F processor has instructions to interpret the different timing of button presses which show up on pin 18 of the HOEA12F processor.<br><br>When the BrightBuddies is in the powered off state, the BrightBuddies turns on when button 2 is pressed. The HOEA12F processor turns on the LED light to the projector. It sends a "Yoture toys" image to the LCD display for a short time (set the picture below). Afterwords the first image 00.jpg is read from the challenge directory 0000 on the Micro-SDCard, processed and then sent to the LCD causing the image to be projected on the projection surface. The "Yoture toys" image is not contained on the Micro-SDCard so it must be stored within the HOEA12F internal non-transitory computer readable storage medium. |

| | | |
|---|---|---|
| | | **Figure 25 BrightBuddies Power-On Logo Display**<br><br>Therefore, BrightBuddies has instructions to interpret input provided via said user interface |
| 1(d). 2.2 | instructions to receive a selection of said challenge including a said plurality of challenge steps to be projected by said projecting device, | On page 2 of the BrightBuddies manual (Figure 5) user interface "Button Functions" are described as:<br><br>1) Go Forward a Step<br>2) Short press Turn on / Long Press Turn Off / Go to home<br>3) Go Back a Step<br>4) Next Drawing |

| | | |
|---|---|---|
| | wherein said challenge is a drawing challenge or a writing challenge, and each of said plurality of challenge steps includes one or more individual lines and/or curves; and | 5) Autoplay/ Long Press Turn on/off Voice<br>6) Previous Drawing<br><br>On page 4 of the manual (Figure 7) under “Usage Guide”, in column 1 “Step-by-step Tracing”, there is an image with caption: “Select a pre-loaded image”, and an image with caption: “Step-by-step instructions are projected on your paper”.<br><br>Buttons 1 through 6 are connected to the HOEA12F processor (Figure 23). The HOEA12F processor contains instructions to interpret the button presses and switch to a new drawing and step through the challenge steps (Figures 9 and 10). Selection of a drawing challenge, including a plurality of challenge steps to be projected by the projecting device, is accomplished by a press of the “Next Drawing” button.<br><br>BrightBuddies contains a Micro-SDCard, which is the challenge repository.<br><br>As explained in 1(preamble) above, the left-hand side of Figure 8 shows the directory (or folder) structure contained on the Micro- |

| | | |
|---|---|---|
| | | SDCard which is located on the back of the control board. The directories are named: 0000, 0001, 0002, 0003, … 0099. Each directory contains a drawing challenge, and each drawing challenge includes a set of images that represent the challenge. Figure 8 shows the directory (or challenge) 0000, containing a "hamster" drawing challenge. The challenge image filenames are: 00.jpg, 01.jpg, 02.jpg and so on. Image 00.jpg shows the overall "hamster" challenge image (cover image), as seen in the right side of Figure 8. Image 01.jpg is the first step of the drawing challenge (second row on the right of the thumbnail image). The active step lines or curves to draw are shown in red. Image 02.jpg is the next challenge step in the process. Previous-step lines are now black and the active-step lines are in red. The drawing challenge steps proceed through 03.jpg, 04.jpg and so on until the challenge is complete. The final image, 07.jpg in this case, shows the final drawing. Figure 10 shows an example sequence of challenge steps for a "fish" drawing challenge. Thus, each step image depicts "one or more individual lines and/or curves" as required by claim 1. |

| | | |
|---|---|---|
| | | The images (nn.jpg) stored in the challenge directories are in JPEG format. These image files are read from the Micro-SDCard over the SDCard interface on pins 50, 51 and 51 on the HOEA12F processor (Figure 23).<br><br>Therefore, the BrightBuddies HOEA12F processor contains instructions to receive a selection of said challenge including a said plurality of challenge steps to be projected by said projecting device, wherein said challenge is a drawing challenge or a writing challenge, and each of said plurality of challenge steps includes one or more individual lines and/or curves. |
| 1(d). 2.3 | instructions to process said selected challenge in accordance with characteristics of at least one of said projecting device, said projection surface, and ambient conditions, to | The BrightBuddies HOEA12F processor contains instructions to process said selected challenge in accordance with characteristics of at least one of said projecting device, said projection surface, and ambient conditions, to form, for each challenge step of the challenge, a projectable challenge step for projection by said at least one projecting device.<br><br>First, in claim element 1(d).2.2 we see that the BrightBuddies stores challenges as a set |

| | | |
|---|---|---|
| | form, for each challenge step of the challenge, a projectable challenge step for projection by said at least one projecting device; | of JPEG images in a directory (or folder) on a Micro-SDCard located on the back of the BrightBuddies' control board (see Figure 20). BrightBuddies projects these images via its projector upon a projection surface (Figures 9, 10, 13 and 14). A CT024TN01 LCD screen (ref. 1(c)) is the key element of the BrightBodies projection device that forms the challenge step's projected image. For each challenge image to be projected, the BrightBuddies HOEA12F processor reads the challenge image from the Micro-SDCard, over the SDCard interface on pins 50 – 51 of the HOEA12F processor. The challenge image read into HOEA12F is in a compressed JPEG format. An image in JPEG format must be decompressed and converted into a format that the CT024TN01 LCD screen can display. This necessarily requires instructions contained in HOEA12F to process the incoming JPEG image into the format that can be sent over the LCD SPI interface (ref. 1(d).1) to the CT024TN01 LCD screen, where the format matches the characteristics of the CT024TN01 LCD screen for displaying an image. |

A logic analyzer was connected to the BrightBuddies' control board. Channel 0 of the logic analyzer was connected to the switch for causing the BrightBuddies to step to the next challenge step. Channel 1 was connected to the Micro-SDCard Data line. Channel 2 was connected to the LCD SPI Data line going to the LCD. Below is a snapshot of the logic analyzer trace.




**Figure 26 Logic Analyzer Trace for a BrightBuddies next Challenge Step Button Push**

On the BrightBuddies switch inputs to HOEA12F, the switch inputs are normally high (3.3 volts) and pulled low (0 volts) when the button is pressed. When the button is released, the input returns to the logic high state. In the logic analyzer trace above, on channel 0 (the top trace) we see the Next Step button returning to the logic high state at time

| | | |
|---|---|---|
| | | 0 ms (milliseconds). At approximately 65 ms, HOEA12F reads the next image file (nn.jpg) from the Micro-SDCard, which is shown as the blue trace for channel 1. Reading the JPEG image file takes approximately 35 ms and completes at the 100 ms time after the next step button is released. Approximately 10 ms after the reading of the image JPEG file is complete, HOEA12F writes the processed image out to the CT024TN01 LCD screen, which is shown by the green trace on channel 2 which is the LCD SPI data output signal. It takes approximately 17 ms to transfer the processed image over the LCD SPI interface. From the logic analyzer's capture of the process, HOEA12F has approximately 10 ms to process the incoming JPEG image file into a format that can be displayed on the CT024TN01 LCD screen according to the characteristics of the CT024TN01 LCD screen.<br><br>The HOEA12F processes each challenge image from JPEG format into the CT024TN01's native 240×320 RGB pixel format — a format dictated by the characteristics of the projecting device — |

| | | |
|---|---|---|
| | | thereby forming a projectable challenge step for projection by the projecting device. As taught by the '791 patent, changing format of an image so as to use a format suitable for projecting device (e.g., Ex. B, col. 8:28-39, col. 5: 1-4, etc.) corresponds to processing "said selected challenge in accordance with characteristics ..." as required by the claim. |
| 1(d). 2.4 | instructions to provide a first projectable challenge step corresponding to a first of said plurality of challenge steps to said projecting device for projecting thereof; and | The BrightBuddies HOEA12F SoC has instructions to provide a first projectable challenge step corresponding to a first of said plurality of challenge steps to said projecting device for projecting thereof.<br><br>On page 4 of the manual (Figure 7) under "Usage Guide", in column 1 "Step-by-step Tracing" there is an image with caption: "Select a pre-loaded image", and an image with caption: "Step-by-step instructions are projected on your paper". Buttons 4 and 6 on BrightBuddies are used to go to the Next or Previous Drawing challenge, i.e., to select a drawing challenge. After selecting a drawing challenge, the BrightBuddies Go Forward a Step button brings up the first challenge step of multiple challenge steps associated with the drawing challenge. |

| | | |
|---|---|---|
| | | Figure 10 shows the BrightBuddies projecting a first projectable challenge step corresponding to a first of said plurality of challenge steps. Figure 14 shows the projecting device. Claim element 1(d).2.3 provides details of instructions to project the challenge step. |
| 1(d). 2.5 | instructions, to be carried out in response to receipt of a next-step input indicating depression of the next-step button of the user interface,<br>to provide a next projectable challenge step, corresponding to a next step according to said sequence of said plurality of challenge step, | On page 4 of the manual (Figure 7) under "Usage Guide", in column 1 "Step-by-step Tracing" there is an image with caption: "Select a pre-loaded image", and an image with caption: "**Step-by-step instructions are projected on your paper**" (emphasis added).<br><br>Figure 10 shows a sequence of image projections that occur when the Go Forward a Step button is pressed sequentially. Claim element 1(d).2.3 shows the process steps carried out by BrightBuddies when the Go Forward a Step button is pressed. Thus, on the 2nd, 3rd, etc. presses of the Go Forward a Step button following the initial press of the Go Forward a Step button, the button serves as the "next-step" button and generates a next-step input indicating depression of the next-step button of the user interface. |

| | | |
|---|---|---|
| | to said projecting device for projecting thereof. | This demonstrates that BrightBuddies HOEA12F SoC has instructions to be carried out in response to receipt of a next-step input indicating depression of the next-step button of the user interface, to provide a next projectable challenge step, corresponding to a next step according to said sequence of said plurality of challenge step, to said projecting device for projecting thereof. |

53. To the extent that any element of claim 1 is found not to be literally present in BrightBuddies — which I do not believe to be the case — it is my opinion that BrightBuddies nonetheless infringes claim 1 under the doctrine of equivalents. For example, element 1(d).2.3 of Claim 1 requires instructions to process the selected challenge "in accordance with characteristics of at least one of said projecting device, said projection surface, and ambient conditions, to form, for each challenge step of the challenge, a projectable challenge step for projection by said at least one projecting device." As detailed in the claim chart above, the HOEA12F processor reads each challenge-step image from the Micro-SDCard in compressed JPEG format and converts it into the CT024TN01 LCD screen's 240×320 RGB pixel format for transmission to the projecting device. This conversion is not a generic or optional computational step — it is required by and dictated by the specific characteristics of the LCD screen within the projecting device. Without this conversion, the image cannot be displayed by the projecting device at all. As taught by the '791 patent, changing the format of an image so as to use a format suitable for the projecting device corresponds to processing the selected challenge in

accordance with the characteristics of the projecting device. (See, e.g., Ex. B, col. 8:28-39; col. 5:1-4.) In my opinion, even if this processing were found not to literally satisfy the claim limitation, it satisfies it under the doctrine of equivalents because it performs substantially the same function (adapting each challenge step image for output by the specific projecting device), in substantially the same way (by reformatting the image to conform to the pixel format of the LCD screen that is the operative element of the projecting device), to achieve substantially the same result (a properly rendered projectable challenge step displayed on the projection surface). The difference, if any, between the claimed processing and BrightBuddies' JPEG-to-LCD format conversion is insubstantial. A POSITA would recognize that reformatting a challenge image to conform to the characteristics of the LCD screen of the projecting device is the functional equivalent of processing each challenge step in accordance with the characteristics of that projecting device, as required by claim 1.

## X. CLAIM 1 IS LIKELY TO WITHSTAND INVALIDITY CHALLENGE

54. In evaluating the validity of Claim 1 of the ‘791 patent, I have reviewed the patent specification, its complete prosecution history, and the prior art references considered by the U.S. Patent and Trademark Office during examination. In addition, I have drawn upon my professional experience in the field as of the June 20, 2017, the latest date in which the Applicant can rely for priority date of claim 1.

55. During prosecution of the application that led to the ‘791 patent, the Patent Examiner considered the Wong reference (Ex. D), as well as several other references. The Examiner specifically evaluated the Wong reference against the pending claims in detail, including conducting an interview with

the Applicant, and ultimately allowed Claim 1, acknowledging the many distinguishing features of Applicant's invention (see, Ex. C, p. 196.).

56. Based on my review of the field and the priority date, the combination recited in Claim 1 – including the feature of *projecting a plurality of challenge steps according to an ordered sequence,* was not taught, suggested, or rendered obvious by the prior art, whether considered individually or in combination.

57. To date, I have not encountered any prior art reference, combination of references, or public disclosure in the art as of June 20, 2017, that teaches or suggests every element of Claim 1, or that would have motivated a POSITA to combine existing references to arrive at the claimed subject matter with a reasonable expectation of success.

58. Based on my independent technical analysis, the specification, the prosecution history, and my knowledge of the relevant state of the art at the time of the invention, it is my opinion that Claim 1is valid, novel, and non-obvious over known prior art. Should Defendant assert specific prior art references or invalidity theories in its opposition, I reserve the right to supplement my opinion and address those materials in detail.

I confirm that the contents of this Declaration are true to the best of my knowledge and belief insofar as it states facts and that it contains my honest opinions on the matters upon which I have been asked to give them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Oct. 8, 2026

Harry G. Direen, Jr.